In the Matter of the Application of ANTHONY T. SMALL, Individually and as Executor, etc., of GRACE A. SMALL, Deceased, to Open the Decree Settling the Accounts of SAMUEL BOLTON, JR., as Executor, etc., of MARY DUGDALE, Deceased, and for a Further Accounting.

ANTHONY T. SMALL, Individually and as Executor, etc., of GRACE A. SMALL, Deceased, Appellant; SAMUEL BOLTON, JR., as Executor, etc., of MARY DUGDALE, Deceased, Respondent.

*Trust — what conversations and acts do not create a trust.*

William Bolton, a few days before his death, said to his brother Samuel Bolton, who was named in his will as one of his residuary legatees, as stated by the latter: "He told me that if I wanted to give $60,000, if I thought best, I could do it. * * * I told him I would do the best I could to carry out his wishes, * * * he named four of them, * * * Brother Crumby, Mrs. Alice Wall, Mrs. Elizabeth Colburn and my sister Mrs. Mary Dugdale." Samuel Bolton testified that after William's death he narrated the conversation to his sister Mary Dugdale, saying, "I told my sister there was $15,000, and she told me to pay her the interest on that and do just as I wanted after that." Samuel paid the interest on $15,000 to Mrs. Dugdale up to the time that he paid $3,000

towards the consideration of some real estate purchased by her, and thereafter paid her the interest on $12,000 — keeping an entry in a book of all the money thus paid to her, the amounts being also entered in the books of a firm, of which both William and Samuel had been members, as follows: "1893, Mch. 1. To William's last wishes by Samuel Bolton, Jr., $15,000."

*Held,* that proof of the foregoing facts did not establish a consummated gift of the principal money upon which interest had been paid, nor create a trust in favor of Mary Dugdale.

LANDON, J., dissented.

APPEAL by Anthony T. Small, individually and as executor, etc., of Grace A. Small, deceased, from an order of the Surrogate's Court of Rensselaer county, entered in said Surrogate's Court on the 19th day of July, 1897, denying his motion for an order requiring Samuel Bolton, Jr., as executor, etc., of Mary Dugdale, deceased, to make a further accounting.

This is an appeal from a decree of the surrogate of Rensselaer county, entered on the 13th day of July, 1897, denying the application of Anthony D. Small, individually and as executor of Grace A. Small, a daughter of Mary Dugdale, to open a final decree made on the 9th day of December, 1896, settling the accounts of Samuel Bolton, Jr., as executor, etc., of Mary Dugdale, and for a further accounting.

The application was based on the alleged ground that on the said final settlement of Samuel Bolton, Jr., he omitted to charge himself with the sum of $12,000 assets of the estate, of the existence of which at the time of such settlement the petitioner was not aware. The facts in regard to said $12,000 are as follows:

In 1893 William Bolton, Joseph Bolton and Samuel Bolton, Jr., brothers of the deceased Mary Dugdale, carried on a brewery business in Lansingburgh, N. Y., under the firm name of S. Bolton's Sons. William died on the 19th day of February, 1893, his interest in the firm property being over $200,000. He left a will executed in the year 1890, and, among other bequests therein, devised $36,000 to his executors, Joseph Bolton and Samuel Bolton, Jr., in trust, to pay the income thereof to his sister, Mary Dugdale, during her life, and at her decease to pay the principal to her children. A few days before his death the following conversation or transaction took place between said William and Samuel Bolton, Jr., as the latter testified on the hearing before the surrogate: "He"

(William) " told me if I wanted to give $60,000, if I thought best, I could do it. * * * I told him I would do the best I could to carry out his wishes. Q. Was there anything said at the time as to the individuals to whom that money was to be distributed? A. He named four of them. Q. Who did he name? A. Brother Crumby, Mrs. Alice Wall, Mrs. Elizabeth Colburn and my sister, Mrs. Mary Dugdale. Q. In what communication did he mention these four names? A. He told me to do as I wanted to and give $15,000 apiece if I wanted to. Q. What did you tell him that you would do? A. I told him I would do the best I could. I told him I would do the best I could about it. * * * Q. That was a few days before his death, was it? A. Yes, sir. Q. That is all that was said or done in regard to that prior to his death, was it? A. Yes, sir. Q. There was no writing delivered at the time? A. No, sir. Q. Where was this money invested of which he spoke? A. That is a pretty hard matter to say where it was invested. * * * Q. Did he at the time mention any specific fund, as to the place it was invested? A. No, sir."

The witness further testified : " Q. Of about how much personal assets did his estate consist? A. That I don't remember. Q. About? A. I couldn't tell you. Q. Isn't it a fact that all his personal assets was invested in the firm of S. Bolton Sons? A. He had money invested in there. * * * Q. Who constituted that firm before William's death? A. Joseph, myself and William. Q. And after William's death you and Joseph were the sole surviving partners? A. Yes, sir."

After the death of William, Samuel Bolton, Jr., related to his said sister the substance of the conversation above detailed, and further testified as follows: " I told my sister there was $15,000, and she told me to pay her the interest on that and do just as I wanted after that. Q. You told her it was from William? A. Yes, sir; that I gave it to her. * * * Q. Mary died in September, 1895? A. I think so; I ain't sure. Q. From William's death until Mary's death did you pay the interest on this $15,000 to Mary Dugdale? A. Yes, sir. Q. You know the property belonging to Mary Dugdale, at her death, known as the McQuide property? A. Yes, sir. Q. How much did she pay for that? A. I gave $3,000 for it. Q. You gave $3,000? A. Yes, sir. Q. Was

the $3,000 part of the $15,000? A. Yes, sir. Q. Subsequent to the purchase of the McQuide property did you pay the interest on the balance of $12,000 to Mrs. Dugdale? A. Yes, gave her the interest on just what I thought was right. * * * Q. What do you say you told her? A. I suppose I have told her how much the interest was when I balanced up her book every year. She knowed what her interest was then. Q. How much was it? A. I don't remember. Q. Could your books tell? A. I suppose they could. Q. Have you got the books here? A. Yes, sir. Q. I show you a book and ask you if that is the pass book of Mary Dugdale with the firm of S. Bolton Sons? A. Yes, sir. Q. This was the book which you receipted when she drew the money? A. I put it on that book that she drew the money. Q. There was no further receipts given her? A. No, sir. Q. But the entries of the payments, etc., were entered in your other books of the firm? A. Yes, sir. Q. The entire amount of credit to Mary Dugdale is in this book? A. Everything that she got. Q. And everything she drew out? A. Yes, sir."

The entry is as follows :

" 1893.

Mc. 1. Interest paid in full to you to this date.

1893.

| Mch. 1. To legacy Samuel Bolton...................... | $23,000 |
| To legacy William Bolton.................... | 36,000 |
| To William's last wishes by Samuel Bolton, Jr. | 15,000 |
| | $74,000 |
| Feb. 22, '95. Paid for J. McQuide place......... ..... | 3,000 |
| Feb. 22, '95. Due................................. | $71,000 " |

" Q. In the judicial settlement of your account and that of Joseph Bolton, as testamentary trustees under the will of William Bolton, your account showed an overpayment of $1,914.10 income to your sister, Mary Dugdale, did it not? A. No, sir; not by rights. I allowed her the interest on that $15,000 and allowed her the interest on the $12,000. Q. Then this surplus interest was the interest on

$12,000 ?   A.  Yes, sir; that is just exactly the way my sister wanted it, the interest on her $15,000, and she always got it.  She got her interest on what my father left her and what my brother William left her at six per cent.   Q. In your judicial settlement of the estate of Mary Dugdale you credited yourself with the sum of $1,019.21, interest accrued from the trust estates of William and Samuel, Sr. ? A. Yes, sir; I gave her the interest on what money she had, on the 36 and the 23 and the 12.   Q. You credited interest from the trust estate what was in fact interest from the $12,000 ?   A. Yes, sir, and the 36 and the 23.   Q. It was a mistake to put it in the account ? A. It was no mistake at all; it was my sister's money, and I had a right to give it to her."

Other facts are stated in the opinion.

The appellant claims that, by the conversations and transactions between William Bolton, deceased, and Samuel Bolton, Jr., and between the latter and Mary Dugdale, deceased, above detailed, $12,000, the balance of the $15,000 remaining unpaid, became the property of Mary Dugdale, deceased; that such conversations and transactions show a. consummated gift of said sum, and, hence, that the executor should be compelled to account therefor, he having omitted so to do on said final accounting.

*Michael D. Nolan*, for the appellant.

*Charles F. Doyle*, for the respondent.

*Samuel Foster*, special guardian, for William B. Dugdale, a minor.

PUTNAM, J. :

At the time of the conversation between William Bolton, deceased, and Samuel Bolton, Jr., in regard to a gift of $15,000 to Mary Dugdale, the former was a member of the firm of S. Bolton's Sons, his property consisting of an undivided interest therein.   This conversation did not have the effect of constituting a gift to, or a trust in favor of, Mrs. Dugdale.   It was not a gift, because there was no delivery, and it depended on the will of Samuel Bolton, Jr., to be exercised in the future, whether the $15,000 should or should not be paid.   For the same reason it did not create a trust in favor of Mrs. Dugdale.   If a trust had been created, the title to the fund

would at once, during the lifetime of William Bolton, have vested in the trustee in favor of the donee. The conversation above detailed certainly could not have that effect. It had no effect, except as the expression of a wish on his part that Samuel Bolton, Jr., should thereafter, if he thought best, give to Mrs. Dugdale $15,000. Had the deceased given to her a written order on his copartners for that sum, the order would have been inoperative and void unless accepted by S. Bolton's Sons prior to his decease. (*Harris* v. *Clark*, 3 N. Y. 93; *Holmes* v. *Roper*, 141 id. 64.) After the death of William Bolton, Samuel Bolton, Jr., as against the legatees and devisees named in the will of his brother, would not have been authorized to pay to Mrs. Dugdale the $15,000 out of his brother's estate, although, of course, as residuary legatee, he could have given her that sum out of his own property.

There being no gift to or trust in favor of Mrs. Dugdale, created by William Bolton — the conversation referred to only having the effect of the expression of a wish by William that Samuel should, if he elected, give her in the future $15,000 — does the evidence in the case, which is in substance above detailed, show such a gift by the latter after the death of his brother?

It certainly shows an intent on the part of Samuel to carry out the suggestion of his brother. He intended to give his sister $15,000, but unless a trust was created by him in her favor, clearly there was no consummated gift. He did give her $3,000 to purchase a house, and also the annual interest, first on the $15,000, and, after the payment of $3,000, on the $12,000 remaining of the fund. But the $12,000, the balance of the fund, was never delivered. It was not separated from his other property. It remained under his control in the firm of S. Bolton's Sons, composed of the respondent and Joseph Bolton. Nor was it separated from the assets of said firm.

Do the facts proved in the case justify the conclusion that Samuel Bolton, Jr., intended to, and did, become a trustee for his sister as to the $12,000 in question?

In 8 American and English Encyclopædia of Law, 1323, it is said : " It is also possible for the donor to constitute himself a trustee for the donee. In order to do this it is only necessary for the owner, in clear and unequivocal language, or by acts amounting to the same thing, to declare that he henceforth holds the chose in

action, or property, as trustee for the donee. When this is duly executed by the owner by an act intended to be binding on himself, equity will uphold it, whether the property be legal or equitable, or whether it be capable of transfer or not." (See, also, *Martin* v. *Funk*, 75 N. Y. 134; *Mabie* v. *Bailey*, 95 id. 206, 209; *People* v. *State Bank of Fort Edward*, 36 Hun, 607.) But it is said: "Though it is not necessary that the declaration of trust be in terms explicit, the donor must have evinced by acts which admit of no other interpretation that such legal right as he retains is held by him as trustee for the donee. * * * The settler must transfer the property to a trustee, or declare that he holds it himself in trust." "To create a trust (where the donor retains the property) the acts or words relied upon must be unequivocal, implying that the person holds the property as trustee for another. (*Martin* v. *Funk*, 75 N. Y. 134." (*Young* v. *Young*, 80 N. Y. 422, 438; *Beaver* v. *Beaver*, 117 id. 421.)

It will be seen that the facts in this case differ from those considered in the cases of *Martin* v. *Funk*, *Mabie* v. *Bailey* and *People* v. *State Bank of Fort Edward* (*supra*). In those cases the donor separated a fund from his other property and deposited it in a bank in the name of the donee, and it was held that such separation and deposit, together with other circumstances shown in those cases, operated as a present transfer of the fund from the donor as an individual to himself as the trustee for the donee, and that such deposit had the effect of a delivery of the subject of the gift.

In this case the fund of $12,000, claimed to have been given to Mrs. Dugdale, was not separated from the other property of the said respondent. His property was invested in the assets of S. Bolton's Sons, and has remained as a part of said assets, a portion of the undivided property of said copartnership to which the said respondent was entitled as a member thereof. There was no change whatever made as to the said fund in consequence of any transaction between him and his sister.

It is clear that the conversations above detailed between Samuel Bolton, Jr., and his sister did not create any trust in her favor. These conversations only had the effect of a declaration on his part that he gave her the $12,000. They do not establish a delivery or an actual consummated transfer of the fund. If there was any

trust shown, it was by those conversations in connection with the credit given Mrs. Dugdale on the books of S. Bolton's Sons. But we are of opinion that, under doctrines above stated, such entry was not sufficient to establish the gift. Samuel Bolton, Jr., told his sister that he gave her $12,000, and thereafter made, or caused to be made, on the firm books of the copartnership of which he was a member, a credit of $12,000. He did not separate that sum from his other property, nor from the firm assets. It was not shown that he charged himself or was charged with the $12,000 on the firm books. Suppose Mrs. Dugdale in her lifetime had commenced an action against Samuel Bolton, Jr., or S. Bolton's. Sons, to recover said sum. She would have been in no better condition on account of the entry on the firm books than if her brother had given her a note or a bond for the $12,000. He had agreed to give her $12,000, and had given her credit on the copartnership books therefor ; but there was no consideration for the promise or for such credit. The transaction between him and William Bolton, deceased, wherein the latter had suggested that he could make a gift to Mrs. Dugdale of $15,000 if he elected, was not a sufficient consideration. She could not have recovered in such an action. (*Holmes* v. *Roper,* 141 N. Y. 64; *Matter of James,* 146 id. 78.) The appellant certainly stands in no better position than she did.

If it had been shown that Samuel Bolton, Jr., had actually withdrawn the $12,000 in question from the firm assets of S. Bolton's Sons ; had been charged on the firm books with that amount, and had thereupon deposited that sum with the firm to himself as trustee for his sister, a different conclusion might be arrived at. In such supposed case, it might be said that the circumstances showed beyond a reasonable doubt that a trust was intended to be created in favor of Mrs. Dugdale. But under the circumstances shown in this case, there was no express declaration of trust, and the circumstances are consistent with another construction than that of an intent to create a trust. The statement of the said respondent to his sister, and his entry on the firm books, evince an intent to give, but not a present intent to pass the title to the fund. If a trust had been created, the title to the $12,000 would have at once passed from said Samuel Bolton, Jr., or the firm, to him as a trustee for the donee.

If one deposits with a copartnership a sum of money and is credited with that sum on its books, he has a claim for the amount deposited enforcible by an action against it. But such deposit and credit do not have the effect of transferring the title to an amount of the assets of the firm equal in value to the amount of the deposit. So the credit given to Mrs. Dugdale on the books of S. Bolton's Sons would have given her a right of action against the firm had there been any valid consideration therefor. But the credit did not have the effect of transferring to her or her trustee $12,000 in value of the assets of said firm. Had a receiver after such credit been appointed of the said copartnership, he would have been authorized to take, hold and convey all of the firm assets without reference to any claim of hers thereto.

The credit in the books of $12,000 to Mrs. Dugdale did not transfer to her or to the said respondent, as trustee for her, any of the assets of the firm, or of Samuel Bolton, Jr., as a member thereof; nor was there any fact or circumstance shown evincing an intent on the part of the said respondent that the title to the fund should pass from him. The facts shown are consistent with an intent on his part to retain the title and control of the fund and give the same to his sister from time to time thereafter as he might elect.

We think the doctrine stated in *Beaver* v. *Beaver* (117 N. Y. 421); *Wadd* v. *Hazelton* (137 id. 215); *Jackson* v. *Twenty-third St. Ry. Co.* (88 id. 520), and *Young* v. *Young* (80 id. 422), applies to this case, that the gift that Samuel Bolton, Jr., intended to make to his sister was not consummated, and hence that the order should be affirmed, with costs.

All concurred, except LANDON and HERRICK, JJ., dissenting.

LANDON, J. (dissenting):

I think that this case falls within a different line of cases from those considered by Mr. Justice PUTNAM. This was, in effect, an application to be heard, not for a final decree. If the evidence offered made a *prima facie* case, I think the application should have been granted unless the *prima facie* case was clearly overcome, and I do not think it was. The evidence tends to support the inference that William Bolton, having previously made the will of which his brother, Samuel Bolton, Jr., is now the executor, in which Samuel

was the residuary legatee and devisee, and in which some provision had been made for his sister, Mrs. Dugdale, and being near .his death, and in contemplation of it, had in mind a desire to make further testamentary provision for her and some others, and in this frame of mind told Samuel Bolton, Jr., what he wanted done, and Samuel promised to do the best'he could to carry out his wishes. It may be inferable that, in reliance upon Samuel's promise, William refrained from making further testamentary provision for Mrs. Dugdale. Samuel's setting apart upon his books the $15,000 for Mrs. Dugdale and paying her part of it, and the interest on the rest during her life, are significant facts. If upon the hearing the inference which I have stated. should be found as a fact, then Samuel should complete what he undertook to do, otherwise he would perpetrate a fraud upon the testator and Mrs. Dugdale, or her representatives, the present applicants. (*Williams* v. *Fitch*, 18 N. Y. 546; *Matter of O'Hara*, 95 id. 403; *Amherst College* v. *Ritch*, 151 id. 282, 323.) An absolute promise by Samuel, the residuary legatee, was not necessary. (*Fairchild* v. *Edson*, 154 N. Y. 199.)

Order affirmed, with costs.