Minerva J. Beaver, as Executrix, etc., Respondent, *v.* Charles C. Beaver et al., as Administrators, etc., Appellants.

To constitute a trust there must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created.

A trust may not be implied from a mere deposit in a savings bank by one person in the name of another.

To constitute a valid gift of personal property there must be on the part of the donor an intent to give, and a delivery, in pursuance of such an intent, of the thing given to or for the donee.

The delivery may be either by actually transferring the manual custody of the thing given to the donee, or by giving to him the symbol which represents possession.

The delivery, however, whether actual or constructive, must be such as will operate to divest the donor of possession of and dominion over the subject of the gift.

An acceptance may be implied where the gift, otherwise complete, is beneficial to the donee.

While a deposit in a savings bank by one person of his own money in the name of another is consistent with an intent on the part of the depositor to give the money to the other, it does not alone, unaccompanied by any declaration of intention, authorize a finding that the deposit was made with that intent; at least where the deposit was to a new account and the depositor received and retained a pass-book, the possession and retention of which by the rules of the bank, known to the depositor, is made the evidence of the right to draw the deposit.

On July 5, 1866, J. made a deposit in a savings bank of moneys belonging to him, in the name of his son A., who was seventeen years old and resided with his father. In compliance with a rule of the bank, J. at the date of the deposit signed with his own name a request to the bank to receive the deposit, a declaration of assent to the by-laws, and a promise to abide by them, running in the name of A. At the same time the bank credited A. with the deposit and issued and delivered to J. a pass-book with a similar entry. In both the account and pass-book were originally written the words "payable to" J., but these were erased before the pass-book was delivered, how or why did not appear. A subsequent deposit was also made and credited on the pass-book. In 1867 J. drew a sum from the account and signed a receipt therefor in the pass-book in his own name. From time to time J. presented the pass-book to have the interest credited, and the bank officers had no dealings with any other person in respect to the account. There was no evidence that A. ever had the pass-book in his possession or

knew of the deposits; he died in 1886. J. died in 1888, having retained possession of the pass-book at all times until his death. He had eight or nine pass-books in the bank representing deposits made in the names of other persons. The rules of the bank, which were printed upon its pass-books, provide that drafts may be made personally or by the order in writing of the depositor if the bank have his signature, "but no person shall have the right to demand any part of his principal or interest without producing the original book that such payment may be entered thereon;" also, that all payments to persons presenting its pass-books shall be valid. In an action brought by the executor of A. to recover said deposits, *held,* that they belonged to the estate of J.; that no trust or gift were established in favor of A.

*Martin* v. *Funk* (75 N. Y. 134); *Howard* v. *Savings Bk.* (40 Vt. 597); *Blasdel* v. *Locke* (52 N. H. 238); *Gardner* v. *Merritt* (32 Md. 78) distinguished.

*Beaver* v. *Beaver* (53 Hun, 258) reversed.

(Argued October 30, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made July 6, 1889, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was brought by the plaintiff, as executor of Aziel G. Beaver, against The Ulster County Savings Institution, to recover certain deposits amounting to the sum of $2,800, or thereabouts, standing to his credit on the books of the bank

The administrators of John O. Beaver claiming the money as part of his estate, they were substituted as defendants in place of the bank, the money having been brought into court. The question litigated was, whether the money represented by the deposits and the accumulations had been vested in Aziel G. Beaver, as a gift from John O. Beaver. The account with the bank consisted of two deposits, one July 5, 1866, of $854.04, and one of October 5, 1866, of $145.96, making in the aggregate $1,000, and the accumulations thereon. It is undisputed that the deposit of $854.04 was made in person by John O. Beaver, and that the money deposited belonged to him. The only evidence to sustain the claim that it was given by him to Aziel G. Beaver is found

in the relations between them, and the circumstances attending the deposit. Aziel G. Beaver was the son of John O. Beaver, and in 1866 was seventeen years of age and resided with his father, as one of a family of thirteen children. John O. Beaver made the deposit of July 5, 1866, in the name of Aziel. The rules of the bank required that on making the first deposit the depositor should subscribe a declaration of his assent to the by-laws of the institution and his promise to abide by them. John O. Beaver, at the date of the first deposit, signed, in his own name, a declaration presented to him by the treasurer of the bank, commencing with the words, "I, Aziel G. Beaver, of Esopus, Ulster county, hereby request the officers of the Ulster County Savings Institution to receive from me $854, and to open an account with me," etc. At the same time the savings bank entered on its books an account beginning: "Dr. Ulster County Savings Bank, in account with Aziel Beaver," and crediting said Aziel with the deposit of $854. Under the name of Aziel Beaver were originally written the words, "payable to John O. Beaver." The bank also, at the same time, issued and delivered to John O. Beaver a pass-book with a similar entry, as in the account on the books of the bank, containing also, as originally written, the words, "payable to John O. Beaver." These words, in the account and in the pass-book, were in the handwriting of the treasurer of the bank, and were written at the same time, and by the same hand, as the other part of the entries. But before the delivery of the pass-book the words "payable to John O. Beaver" were erased therefrom, and the same erasure was made in the account on the bank-book. How the interlineation came to be made in the first instance does not appear, nor does it appear at whose suggestion, or under what circumstances, the erasures were made. Subsequently, on October 5, 1866, another deposit of $145.96 was made to the account and credited on the pass-book.

There are no facts, except as above stated, tending to show a gift of the money deposited to Aziel. On the other hand,

many circumstances were shown which are claimed to be inconsistent with a gift by the father to the son of the money deposited. The son married a few years after the deposit was made, and died in 1886, twenty years after the date of the deposits, being then of the age of thirty-seven years, leaving a wife, but no children, surviving. John O. Beaver, the father, died in 1888. The father retained possession of the pass-book at all times until his death. In April, 1867, he drew $27.29 from the account, and signed a receipt therefor in the pass-book in his own name. No other sum was ever drawn from the account. From time to time John O. Beaver presented the pass-book to the bank to have the interest credited, and the bank officers had no dealings with any other person in respect to the account.

There is no evidence that Aziel G. Beaver ever had the pass-book in his possession or knew of the deposits. In May, 1870, Aziel opened an individual account at the bank in his own name, which continued until March, 1886, when he drew out $1,818.56, in full of the account. It appears that John O. Beaver had eight or nine pass-books in the bank, representing deposits made in the names of other persons. He left at his death real estate of the value of $12,000 to $15,000, and more than $20,000 in personal property.

One of the rules of the bank provides that "drafts may be made personally or by the order in writing of the depositor (if the institution have the signature of the party), or by letters of attorney duly authenticated, but no person shall have the right to demand any part of his principal or interest without producing the original book that such payment may be entered thereon;" and another declares that "although the institution will endeavor to prevent fraud or imposition, yet all payments to persons presenting the pass-books issued by it shall be valid payments to discharge the institution." The rules were printed on the pass-books of the bank.

*A. T. Clearwater* for appellant. The deposits made under the circumstances found or established as matter of fact in

Statement of case.

this case, was not a gift of the subject-matter thereof, within the requirements of law. (*In re Crawford,* 113 N. Y. 560; 2 Kent's Com. 438, 439; *Harris* v. *Clark,* 3 N. Y. 93, 113; 1 Parsons on Cont. 234, 235; *Jackson* v. *T. T. S. R. R. Co.* 88 N. Y. 520, 526; *Curry* v. *Powers,* 70 id. 212, 217; *Young* v. *Young,* 80 id. 422; 1 Powers on Cont. 235; *Graugiac* v. *Arden,* 10 Johns. 293; *Trow* v. *Shannon,* 78 N. Y. 446; *Doty* v. *Wilson,* 47 id. 505, 580, 583; *Grey* v. *Grey,* Id. 552, 555, 556; *Pope* v. *B. S. Bank,* 48 Am. Rep. 781; *Orr* v. *McGregor,* 43 Hun, 532.) In the present case 'there was neither delivery, nor acceptance, nor intent to make a gift on the part of the donor. (*Eastman* v. *W. S. Bank,* 136 Mass. 208; *Orr* v. *McGregor,* 43 Hun, 538; *People* v. *M. and T. Sav. Inst.* 92 N. Y. 7. *Schoenwald* v. *M. Bank,* 57 id. 418; *Appleby* v. *E. S. Bank,* 62 id. 12; *Robinson* v. *Ring,* 72 Me. 140; *Scott* v. *Berkshire Bank,* 140 Mass. 157; *Nutt* v. *Morse,* 142 Me. 1; *Pope* v. *B. S. Bank,* 58 Vt. 284; *Walker* v. *Walsh,* 11 N. E. Rep. 727; *Bennett* v. *Cook,* 28 S. C. 353; *Brabook* v. *B. S. Bank,* 104 Mass. 228, 231.) The foregoing rules are not relaxed where the donor and donee occupy the relation of father and son, living together and the son a minor. (*Graugiac* v. *Arden,* 10 Johns. 293, 295; *Jones* v. *Lock,* 33 L. J. Ch. 117; *Greary* v. *Page,* 9 Bosw. 290; *Meigs* v. *Meigs,* 15 Hun, 453, 458; Laws 1875, chap. 371, § 24.) There is no evidence that the depositor intended to transfer the title. (*Northrup* v. *Hale,* 72 Me. 275; *Fiero* v. *Fiero,* 5 T. & C. 151, 152.) The deposit, made in this manner, and under the circumstances found by the court, did not create a trust in the father for the benefit of the son. (80 N. Y. 430; *Barker* v. *Harbeck,* 17 N. Y. S. R. 678; 2 N. Y. Suppl. 425; *Martin* v. *Funk,* 75 N. Y. 141, 142; *Orr* v. *McGregor,* 43 Hun, 533; *Richards* v. *Delbridge,* L. R. [18 Eq. Cas.] 11; *Mabie* v. *Bailey,* 95 N. Y. 210; *Scott* v. *Harbeck,* 49 Hun, 292.) The court erred in excluding testimony offered by the defendants on the question of intent. (*Doty* v. *Wilson,* 47 N. Y. 580, 583; *Scott* v. *B. C. S. Bank,*

140 Mass. 157, 161, 162, 165, 166; *Sanford* v. *Ellithorp,* 95
N. Y. 52; *Leach* v. *Kelsey,* 7 Barb. 466.) The evidence was
not within the purview of section 829 of the Code of Civil
Procedure. (*Cary* v. *White,* 59 N. Y. 336.)

*F. L. Westbrook* for respondent. In the absence of any
explanation or contradictory evidence the legal title to choses
in action must be deemed to be in the person in whose name
they are taken or to whom they are payable. (*Sanford* v.
*Sanford,* 45 N. Y. 723; *Bank* v. *Hammitt,* 50 id. 159; *In re
Crawford,* 23 N. Y. S. R. 726.) A gift of money is valid and
completed when the right to it is settled, or to get it under
the control of the donee is shown; and, in determining that
question, the acts of the donor are to be interpreted by his
intention at the time. (*Orr* v. *McGregor,* 44 Hun, 531;
*Fulton* v. *Fulton,* 48 Barb. 591; *Gray* v. *Barton,* 55 N. Y.
72; *Hunter* v. *Hunter,* 19 Barb. 638; *Howard* v. *Sav. Bk.,*
40 Vt. 599; *Smith* v. *Sav. Bk.,* 101 N. Y. 58, 60; *Grymes* v.
*Hone,* 49 id. 22; *Taylor* v. *Kelly,* 5 Hun, 115; *Whitney* v.
*Barrett,* 7 Lans. 108; *Barker* v. *Harbeck,* 17 N. Y. S. R. 678;
2 R. S. [6th ed.] 378, § 391.) This court will presume that
the evidence was sufficient to uphold the findings of fact and
the conclusions of law based on such findings of fact. (*Porter*
v. *Smith,* 107 N. Y. 531; *Spencer* v. *Chambers,* 39 Hun, 193;
*Davis* v. *Best,* 23 N. Y. S. R. 876.) Plaintiff's case is made
out and established by proving that the savings institution had
so much money on deposit in the name of the testator. (*Martin* v. *Funk,* 75 N. Y. 137; *Scott* v. *Harbeck,* 49 Hun, 293;
*Orr* v. *McGregor,* 43 id. 532; *Holliday* v. *Lewis,* 14 id. 480;
*Tucker* v. *Bradley,* 33 Vt. 325; *Hunter* v. *Hunter,* 19 Barb.
638; *Bedell* v. *Carll,* 33 N. Y. 584.) The gift was effectual,
although plaintiff's testator had the pass-book in his possession
and drew the interest. (*Willis* v. *Smyth,* 91 N. Y. 301; *Orr*
v. *McGregor,* 43 Hun, 532; *Blasdel* v. *Locke,* 52 N. H. 238;
*Grymes* v. *Hone,* 49 N. Y. 17; *Fowler* v. *Bank,* 113 id. 453;
*Mabie* v. *Bailey,* 95 id. 206; *Borne* v. *Bank,* 21 Hun,
238; *Scott* v. *Harbeck,* 49 id. 294.) A trust was created in

favor of plaintiff's testator. (*Fowler* v. *Bank*, 113 N. Y. 453 ; *Fisher* v. *Fields*, 10 Johns. 496, 505 ; Perry on Trusts, § 89 ; *Barry* v. *Lambert*, 98 N. Y. 306 ; *Gilman* v. *McArdie*, 99 id. 459, 461 ; *Chapman* v. *Porter*, 69 id. 279 ; *Smith* v. *Lee*, 2 T. & C. 592 ; *Fulton* v. *Fulton*, 48 Barb. 592 ; *Mabie* v. *Bailey*, 95 N. Y. 206, 210 ; 75 id. 137–139, 143 ; *Gerrish* v. *Sav. Inst.*, 128 Mass. 161, 163 ; *Hulburt* v. *Hulburt*, 49 Hun, 192.) All the testimony offered by defendants as to what took place between defendant's intestate and plaintiff's testator, or what was said by either, was incompetent. (Code of Civ. Pro. § 829 ; *Clift* v. *Moses*, 112 N. Y. 434, 436.)

Andrews, J. It is found that the money with which John O. Beaver made the deposit of $854.04 July 5, 1866, belonged to him. The inference that the deposit $145.96, made October 5, 1866, was also made by him from his own means, does not admit of reasonable question. The pass-book was at all times in his possession. Concurrently with the last deposit, the amount was entered therein. It is affirmatively shown that Aziel, who was then a minor, lived with his father and had no money of his own, and the circumstances are quite satisfactory to show that he never, at any time during his life, knew of the bank account. The question in the case turns upon the legal effect of the deposit, made in connection with the attendant and subsequent circumstances. If they establish either a trust in favor of Aziel as to the $854.04, deposited July 5, 1866, or a gift of the fund deposited, then clearly the subsequent deposit would, in the absence of explanation, be impressed with the same character and be governed by the same rules. On the other hand, if the first deposit was not affected with any trust and was not a gift, neither is the last one. Both were the property of John O. Beaver, or both the property of the son, either by a beneficial or legal title.

The trial court seem to have sustained the transaction as a gift, but at the same time refused to find that there was no trust. There is no warrant under the decisions of this court to uphold the deposit of July 5, 1866, as a trust. The case of

*Martin* v. *Funk* (75 N. Y. 134), established a trust in favor of the claimant in that case, in respect of a fund deposited by another in a savings bank to his own credit, in trust for the former, the latter taking from the bank at the time a pass-book in which the account was entered in the same way. The court applied the doctrine that the owner of a fund may by an unequivocal declaration of trust, impress it with a trust character, and thereby convert his absolute legal title into a title as trustee for the person in whose favor the trust is declared. There was no declaration of trust in this case, in terms, when the deposit of July 5, 1866, was made, nor at any time afterwards, and none can be implied from a mere deposit by one person in the name of another. To constitute a trust there must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created. It would introduce a dangerous instability of titles, if anything less was required, or if a voluntary trust *inter vivos* could be established in the absence of express words, by circumstances capable of another construction, or consistent with a different intention. (*Young* v. *Young*, 80 N. Y. 438, and cases cited.)

The plaintiff's title to the fund must depend, therefore, upon the question of gift. The elements necessary to constitute a valid gift are well understood and are not the subject of dispute. There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and on the part of the donee, acceptance. The subject of the gift may be chattels, choses in action, or any form of personal property, and what constitutes a delivery may depend on the nature and situation of the thing given. The delivery may be symbolical or actual, that is, by actually transferring the manual custody of the chattel to the donee, or giving to him the symbol which represents possession. In case of bonds, notes or choses in action, the delivery of the instrument which represents the debt is a gift of the debt, if that is the intention; and so, also, where the debt is that of the donee it may be given, as has been held, by the delivery

of a receipt acknowledging payment. (*Westerlo* v. *De Witt*, 36 N. Y. 340; *Gray* v. *Barton*, 55 id. 72; 2 Schouler on Pers. Prop. § 66, *et seq.*) The acceptance, also, may be implied where the gift, otherwise complete, is beneficial to the donee. But delivery by the donor, either actual or constructive, operating to divest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. Anything short of this strips it of the quality of completeness which distinguishes an intention to give, which alone amounts to nothing, from the consummated act, which changes the title. The intention to give is often established by most satisfactory evidence, although the gift fails. Instruments may be ever so formally executed by the donor, purporting to transfer title to the donee, or there may be the most explicit declaration of an intention to give, or of an actual present gift, yet unless there is delivery the intention is defeated. Several cases of this kind have been recently considered by this court. (*Young* v. *Young*, 80 N. Y. 438; *Jackson* v. *Twenty-third St. Ry. Co.*, 88 id. 520; *In re Crawford*, 113 id. 560.)

We are of opinion that there is lacking in this case two of the essential elements to constitute a gift by John O. Beaver to his son, of the money deposited July 5, 1866, viz., an intent to give and a delivery of the subject of the alleged gift. The only evidence relied upon to establish an intent on the part of the father to make a gift to his son is the transaction at the bank on the day the deposit was made, in connection with the relation between the parties. There is no proof of any oral statement made by the father on that occasion, disclosing an intention to make a gift, and not a scintilla of evidence that afterwards, during the twenty years which elapsed before the son's death, the father made any declaration or in any way recognized that the money belonged to the son, or had been given to him. Evidence offered, on the part of the defendant, of declarations of John O. Beaver, made on the day of the deposit and

afterwards, inconsistent with the theory of an intent to give
the money to Aziel, were excluded on the objection of the
plaintiff.   The acts of John O. Beaver, after the account was
opened, tend strongly to negative the claim that the money
was deposited with intent to give it to the son.   The drawing
out of the interest by John O. Beaver on one occasion, his
retention of the pass-book for twenty-two years, and procuring
it to be written up from time to time, the fact that the son,
so far as appears, never was informed of the existence of the
account, are strong indications that John O. Beaver did not
make the deposit in the son's name, with intent to make a
present gift of the money.   The father dealt with the account
as his own, and if the control he exercised over it during the
minority of Aziel could be reasonably explained on the theory
that he acted as the natural guardian of the son, no such
explanation is possible as to the sixteen years of the life of the
son after he reached his majority.

The trial court having found that there was a consummated
gift, which, of course, includes a finding of an intent to give,
this court is concluded from reviewing the finding, if there
was any competent and sufficient evidence to support it.   The
form of the account is the essential fact upon which the
plaintiff relies.   It may be justly said that a deposit in a
savings bank by one person, of his own money to the credit
of another, is consistent with an intent on the part of the
depositor to give the money to the other.   But it does not,
we think, of itself, without more, authorize an affirmative
finding that the deposit was made with that intent, when the
deposit was to a new account, unaccompanied by any declara-
tion of intention, and the depositor received at the time a pass-
book, the possession and presentation of which, by the rules
of the bank, known to the depositor, is made the evidence of
the right to draw the deposit.   We cannot close our eyes to
the well-known practice of persons depositing in savings
banks money to the credit of real or fictitious persons, with
no intention of divesting themselves of ownership.   It is
attributable to various reasons; reasons connected with taxation;

rules of the bank limiting the amount which any one individual may keep on deposit; the desire to obtain high rates of interest where there is a discrimination based on the amount of deposits, and the desire, on the part of many persons, to veil or conceal from others knowledge of their pecuniary condition. In most cases where a deposit of this character is made as a gift, there are contemporaneous facts or subsequent declarations by which the intention can be established, independently of the form of the deposit. We are inclined to think that to infer a gift from the form of the deposit alone would, in the great majority of cases, and especially where the deposit was of any considerable amount, impute an intention which never existed and defeat the real purpose of the depositor. The relation of father and son does not in this case, we think, strengthen the plaintiff's case. It may be true that as between parent and child a presumption of a gift may be raised from circumstances, where it would not be implied between strangers. (*Ridgway* v. *English*, 22 N. J. L. 409.) But where a deposit is made in the name of another, without any intention on the part of the depositor to part with his title, he would be quite likely to select a member of his own family to represent the account, and in this case this is the natural explanation of the transaction. The circumstance of the erasure in the declaration signed by John O. Beaver, and also in the account on the books of the bank of the words, "payable to John O. Beaver," throws no light upon the actual intention. If they were originally inserted at the suggestion of John O. Beaver, it would seem to imply that when he went to the bank he did not intend to part with the control of the money, and it is scarcely presumable that he changed his intention at the very time of making the deposit. If the words were inserted by the treasurer without authority, he may have erased them so as to leave no evidence of an intent to evade the law or the rules of the bank in respect to deposits; or he may have done it for some other unexplained reason. Again, it is possible that John O. Beaver desired that the fund should be placed so that it could be drawn on presentation of the pass-book, without

the necessity of a written order, and the erasure was made for this reason. In short, the reason for the insertion of the words in the first instance and their subsequent erasure is matter of speculation merely, and does not aid in the interpretation of the main transaction.

There was not only a failure to prove an intent on the part of John O. Beaver to make a gift, but the case is, we think, equally defective on the part of delivery. The declaration and request drawn by the treasurer ran in the name of Aziel, as did the promise recited to abide by the rules of the bank. But it was signed by John O. Beaver in his own name, and not as agent for Aziel, and in law was his request and his promise. John O. Beaver took and retained possession of the pass-book on which the rules were printed. The rules prescribed the undertaking of the bank and the conditions to be observed by depositors in requiring payment. Under these rules John O. Beaver had the exclusive dominion over the account, and the exclusive right to draw upon it so long as he retained the pass-book. It was his signature that the bank had, and not that of Aziel, and the rule authorizing drafts by the depositor only applies when the bank has his signature. But the rule also prescribed that "no person shall have the right to demand any part of his principal or interest without producing the original book that such payments may be entered thereon;" and, also, that "all payments to persons producing the pass-books shall be valid payments to discharge the institution." Under these rules Aziel was never in a situation to control the account, while John O. Beaver had complete authority over the fund at all times. If John O. Beaver had delivered the pass-book to Aziel with intent to give him the deposit there would have been a constructive delivery of the subject of the gift. (*In re Crawford, supra.*) But he never did this or any equivalent act.

We think, for the reasons stated, that the plaintiff failed to establish a gift, or to justify a finding of a gift. The question of gifts, in connection with deposits of savings banks, has of late years been frequently considered by the courts in

various states. The preponderance of authority seems to be in favor of the views we have expressed. (*Robinson* v. *Ring*, 72 Me. 140; *Burton* v. *Bridgeport Savings Bank*, 52 Conn. 398; *Marcy* v. *Amazeen*, 61 N. H. 131; *Schick* v. *Grote*, 42 N. J. Eq. 352; *Scott* v. *Berkshire Co. Savings Bank*, 140 Mass. 157; Am. and Eng. Encyclo. of Law, tit. Gifts, and notes.)

The cases of *Howard* v. *Savings Bank* (40 Vt. 597); *Blasdel* v. *Locke* (52 N. H. 238); *Gardner* v. *Merritt* (32 Md. 78), go furthest towards sustaining transactions similar to the one in question, as gifts, of any we have noticed, but they are distinguishable in material respects from this.

Our conclusion is that the cause of action in this case was not made out, and the judgment should, therefore, be reversed and a new trial ordered.

All concur, except DANFORTH, J., dissenting; FINCH, J., not voting.

Judgment reversed.