ownership, and thereafter had set fire to the property, and that thus no liability whatever was created under the policy. It is unnecessary, however, to decide that question, for we think it appears as a matter of fact that there was a waiver of the right to an appraisement. The fire occurred November 14, 1895. The assured submitted formal proofs of loss on November 22d. On the 14th of December, no reply having been received from the company, the assured signed an agreement for submission to appraisers, and forwarded the same to the company for signature, with a request for information regarding an appraisement. There was no reply until January 14, 1896, when the attorney for the assured received an inquiry from the company for the address of the appraiser selected. This address was at once furnished, but no further word was received from the company, and, 60 days having passed after submission of the formal proof of loss, suit was commenced on January 28th. We have not overlooked the fact that a letter was sent to the appraiser named, in care of the assured, at the latter's address, and was returned to the sender, marked "Not found." The company and its attorney both knew the address of the attorney for the assured, who was endeavoring to obtain payment of the policy; and no good explanation is offered why, if sincere in their effort to obtain the appraiser's address, they did not make inquiry of the attorney. When this was done later, the information was promptly furnished. These facts clearly show that the assured was unreasonably kept in ignorance as to whether the company desired an appraisal or not. No positive steps were taken by the company, and the only steps towards an appraisement were taken by the assured, who thereby showed a willingness to have such an appraisement. We must therefore conclude that, independent of other considerations, the negligence of the company to request an appraisement, or to state its intention or desire for one, within the 60 days following the submission of formal proof of loss, was a waiver on its part of its privilege under the policy to demand an appraisal.

The judgment should therefore be affirmed, with costs. All concur.

---

(24 Misc. Rep. 595.)

### BOARD OF DOMESTIC MISSIONS OF THE REFORMED CHURCH IN AMERICA v. MECHANICS' SAV. BANK OF FISHKILL-ON-HUDSON et al.

(Supreme Court, Special Term, Orange County. September, 1898.)

1. TRUSTS—CREATION—INTEREST.

A decedent had personally directed the treasurer of her savings bank to make her two pass books payable in trust for a named eleemosynary society, adding that she would call for them on her return from her then destination. She was shortly to enter a hospital to submit to a dangerous operation, and feared she would not survive it. The transfer was made, and, she not having called for the books, they were sent to her indorsed as requested. She indorsed on an envelope containing them a direction to send to the bank, which was done. The bank had a rule that orders to transfer accounts should be in writing. She left a will making the same disposition of them, which failed because made within two months of her death. *Held*, that a valid trust was created.

**2. SAME—BANK ACCOUNTS—WRITTEN ORDER TO TRANSFER.**
    The requirement that such orders should be written is deemed to have been waived by the bank for whose protection it was intended, and hence does not defeat the trust.

Action by the Board of Domestic Missions of the Reformed Church in America against the Mechanics' Savings Bank of Fishkill-on-Hudson and another to construe a will.    Judgment for plaintiff.

H. D. Van Orden, for plaintiff.
S. K. Phillips, for defendant Savings Bank.
Milton A. Fowler, for defendant Dean.

HIRSCHBERG, J.    On the 10th day of October, 1896, Eliza Ann Crowther, an unmarried lady, resident at Glenham, in Dutchess county, was in possession of two pass books of the defendant the Mechanics' Savings Bank,—one, No. 71, representing, with accrued interest to the time of the commencement of this action, $2,971.38; and the other, No. 708, representing, with like accrued interest, $1,485.68.    The money was hers.    On the day named she took the books to the bank, and told the treasurer she was going to a hospital in Brooklyn for the purpose of submitting to an operation, and feared she would never return.    She instructed him to make the books payable in trust for the Board of Domestic Missions of the Reformed Church in America, adding that she was on her way to Newburgh, and would call for the books on her return.    The treasurer took the books from her, agreeing to comply with her directions, and stated that on her return from Newburgh he would have an order prepared for her to sign requesting the transfers of the accounts.    He did not state to her that a rule of the bank required a written order, nor did she ever give such an order.    He did make the transfers, writing in each book the words: "Order Oct. 10—96, Eliza Ann Crowther in trust for Board of Domestic Missions of the Reformed Church in America," and on the same day transferred the accounts on the books of the bank in the same way.    He never saw Miss Crowther again, but the books after the transfer were returned to her, and were placed by her in a sealed envelope, indorsed in her own hand with the words, "Send this to the Mechanics' Savings Bank, Fishkill Landing.    Eliza Ann Crowther."    The books in the envelope so indorsed were placed by her in a tin box, also sealed, and after her death were delivered by the defendant James E. Dean, her executor, to the bank, in whose possession they have since remained.    Miss Crowther died at the hospital about two weeks after the transfer was made, leaving a will dated September 3, 1896, in which she devised and bequeathed substantially all her property to the plaintiff; but which devise and bequest, being made within two months of the testatrix's death, fails because of the prohibition contained in section 6, c. 319, Laws 1848.

It is apparent, from this summary of the facts, that an effective trust was declared by the deceased for the benefit of the plaintiff. This is the doctrine of all the cases from Martin v. Funk, 75 N. Y. 134, to Cunningham v. Davenport, 147 N. Y. 43, 41 N. E. 412, and is stated by the court in the latter case as follows (page 47, 147 N. Y.,

and page 413, 41 N. E.): "The doctrine laid-down by this court in the previous cases amounts to this: that the act of a depositor in opening an account in a savings bank in trust for a third party, the depositor retaining the possession of the bank book and failing to notify the beneficiary, creates a trust if the depositor dies before the beneficiary, leaving the trust account open and unexplained." The cases of Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 1134, and Proseus v. Porter, 20 App. Div. 44, 46 N. Y. Supp. 656, cited by the defendant Dean, executor, do not conflict with the doctrine referred to. The former was the case of an alleged gift not involving the declaration of a trust, and in the latter the court, while commenting on the circumstances of the delivery of the bank book to the beneficiary as a strong circumstance in favor of the trust, distinctly refers to it (page 46, 20 App. Div., and page 657, 46 N. Y. Supp.) as an act which "goes further than is positively requisite." The cases all turn on the question of intent, which, in the absence of other explanation, is controlled by the terms of the deposit. In this case the intention to create a trust is greatly strengthened by the prior will, which the deceased will be presumed to know would prove inoperative should she die within two months of its date. As has been seen, she apprehended a fatal result of the surgical operation, and created the trust in view of that hazard, and in order to insure a disposition of her property in accordance with her wishes.

The estate cannot destroy the trust because the bank acted on a verbal order instead of a written order. The precise terms of the rule are not in evidence, but the rule is manifestly for the protection of the bank and its depositors to guard against error, and by way of furnishing a justification to the institution for changing its accounts. Under the facts of this case, it will be deemed to have been waived. Nothing was lacking to the creation of a valid trust, and the plaintiff is entitled to the judgment demanded, with costs. Ordered accordingly.