(163 App. Div. 413)

### In re HENDRICKS' ESTATE.

### HENDRICKS v. STATE COMPTROLLER.

#### No. 6047.·

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

1. TAXATION (§ 893*)—TRANSFER TAX—PROPERTY LIABLE—STOCKS.

     In transfer tax proceedings, evidence *held* sufficient to show a valid gift inter vivos of certain stocks by decedent to his wife prior to his death, viz., an intent to give, a delivery, and an acceptance, and hence the stock was not taxable under Tax Law, § 220 (Consol. Laws, c. 60; Laws 1909, c. 62, as amended by Laws 1911, c. 732, § 1) providing for a tax on the transfer of stocks where the transfer is by will, intestate law, or gift, etc., in contemplation of death.

     [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 893.*]

2. GIFTS (§ 23*)—INTER VIVOS—DELIVERY.

     After a gift is made complete by delivery, the donee need not retain possession of the property, and it may be redelivered to the donor as the agent of the donee.

     [Ed. Note.—For other cases, see Gifts, Cent. Dig. § 40; Dec. Dig. § 23.*]

Appeal from Surrogate's Court, New York County.

Transfer tax proceedings upon the estate of Harmon Hendricks, deceased. From an order of the Surrogate's Court affirming an order assessing a transfer tax, Blanche Hendricks individually and as executrix appeals. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

T. Ludlow Chrystie, of New York City, for appellant.
Moses R. Ryttenberg, of New York City, for respondent.

McLAUGHLIN, J. Harmon Hendricks, a resident of the state of New York, died on the 27th of April, 1912. He left a last will and testament, which was admitted to probate and letters testamentary issued to his widow, the appellant, the sole executrix therein named. Transfer tax proceedings were instituted by her, and the appraiser appointed included among the assets of the estate of the testator certain stocks which she claimed were her own property. An order was subsequently entered in the Surrogate's Court affirming an order assessing a transfer upon these stocks, from which she appeals.

The will was executed on the 27th of March, 1911, and on that day the deceased took from a safe deposit box, which was held in the joint names of himself and the appellant, some of the certificates of stock in question. These certificates, together with assignments, he delivered to her, in the presence of their son, accompanied by words of gift. She immediately handed the certificates back to him, and the next day they were returned to the joint safe deposit box. In June following the remainder of the stocks in controversy were dealt with in the same manner. The stocks were not transferred to the appellant on the books of the corporations until after the husband's death. After the certificates had been delivered, the husband, up to the time of his death, collected the dividends and deposited the same to his credit in a bank account from which the appellant also had the right to withdraw funds. The appellant had considerable property in her own right and was also a beneficiary of a trust fund. The income from these sources had also for a number of years been collected by her husband and deposited with his own income in this same account, which had been used to pay the general expenses of the decedent and his family.

At the time the certificates of stock were delivered, the decedent was 74 years old, but in good health, and his death was the result of an operation to remedy a malady which was not of a lingering nature. Subsequent to the time when the deliveries were made, the deceased consulted his attorney in relation thereto. The attorney testified that in answer to questions put by him the deceased said that the certificates and assignments had been actually delivered to his wife; that the gifts were not made in contemplation of death, but because he wanted his wife to have them, since she had contributed liberally towards the maintenance of the household for many years; that the reason why he did not have the stocks transferred on the books of the corporations was because he received all of the income from his wife's property, which he deposited to the credit of his own account; and that he might wish to use some of the stocks as collateral in case he desired to purchase other stocks. The attorney then advised him that an agreement should be prepared, setting forth exactly what the arrangement was, and on October 9, 1912, the parties entered into such an agreement. It recited that Hendricks had theretofore assigned, transferred, and set

over to his wife the stocks in question, and at her request had retained the certificates; that it was mutually agreed he was to retain them in his custody until she should demand them, and he was, in the meantime, authorized to collect the dividends thereon, sell, exchange, or otherwise dispose of the stocks for any purpose he might wish, without in any way being accountable therefor. The agreement also contained this clause:

"It is expressly understood and agreed, however, that the title to said stocks is and has been for some time past vested in the party of the second part" (the wife) "and nothing herein shall in any way affect the same."

The learned surrogate was of the opinion that the gifts were not made in good faith and were not intended to take effect in possession or enjoyment until after Hendricks' death.

[1, 2] Section 220 of the Tax Law (Laws of 1909, c. 62, § 200, as amended by Laws of 1911, c. 732, § 1) provides for a tax on the transfer of stocks subject to tax when the transfer is made by will, intestate law, or "by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor or intended to take effect in possession or enjoyment at or after such death." All the elements necessary to constitute a valid gift inter vivos are here present. The evidence establishes an intent on the part of the donor to give, a delivery of the thing given, and an acceptance by the donee. Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531; Matter of Bolin, 136 N. Y. 177, 32 N. E. 626. It is true a gift must be established by evidence that is clear and satisfactory. Tompkins v. Leary, 134 App. Div. 114, 118 N. Y. Supp. 810; Hemmerich v. Union Dime Savings Inst., 205 N. Y. 366, 98 N. E. 499, Ann. Cas. 1913E, 514. But after the gift is made complete by delivery, it is not necessary that the donee shall retain possession of the property, and it may be redelivered to the donor as the agent of the donee. Gannon v. McGuire, 160 N. Y. 476, 55 N. E. 7, 73 Am. St. Rep. 694.

The certificates were actually delivered, and the only possible question remaining is as to the purpose and intent of such delivery. Bearing upon that we have the uncontradicted testimony of the donee, her son, the attorney for the donor, and, in addition, the formal written declaration of the decedent himself. The character of this evidence is such that, had an action been brought by her against him to establish her title to the stocks, it would—the evidence being the same as here— necessarily have resulted in her favor. The learned surrogate, as appears from his opinion, reached the conclusion which he did by reason of the fact that the control which this deceased could exercise over the stocks was greater than that reserved to the donor in Matter of Brandreth, 169 N. Y. 437, 62 N. E. 563, 58 L. R. A. 148, and Matter of Cornell, 170 N. Y. 423, 63 N. E. 445. But it is the source and not the extent of the control which is important. In each of these cases the donor, at the time of making the gifts, reserved to himself the income of the property during his life. To that extent the gifts were conditional. Here the transfers of the certificates did not have attached to them any condition or reservation whatever. The source of the donor's control was an agreement subsequent to the gifts and not a condition

attached to them. The stocks'in question did not belong to the deceased at the time of his death, they are not a part of his estate, and therefore not subject to a tax. A conclusion to the contrary would be without evidence to support it.

The order appealed from, so far as it imposes a tax upon such stocks, is reversed, the appraiser's report modified accordingly, and the matter remitted to the Surrogate's Court to enter an order as indicated in this opinion, with $10 costs and disbursements to the appellant. All concur.