In the Matter of the Estate of JAMES COX BRADY, Deceased.

Surrogate's Court, Albany County, April 1, 1929.

*Neile F. Towner,* for the executors.

*James A. Quinn,* for the State Tax Department.

*Edward J. O'Connell,* special guardian.

SCHENCK, S. Application is made by the executors of the estate of James Cox Brady, the decedent herein, to secure a judicial determination as to the ownership of the stock of Brady Securities and Realty Corporation. The executors have reached the conclusion that this stock belongs to the wife and children of decedent, having been acquired by them by gift of decedent prior to his death, and ask a determination as to whether the same shall be retained by them as assets of the estate or turned over to the wife and children of decedent. It seems quite necessary for the proper administration of the estate that it now be determined whether or not this stock is part of decedent's estate and as such subject to the provisions of the Transfer Tax Law.

James Cox Brady died November 10, 1927, leaving him surviving a widow and five children, four of whom were minors at the time of his death. In April, 1923, more than four and one-half years prior to his death, decedent caused to be incorporated a corporation known as Brady Securities and Realty Corporation with a capital stock of 10,000 shares, no par value, and on or about June 21, 1923, there was issued to decedent certificate No. 1 for 10,000 shares, being the entire capital stock of the corporation, in return for a large amount of valuable property conveyed by decedent to the corporation, including real estate holdings and a contract for the purchase of an office building. In September, 1923, decedent surrendered certificate No. 1, representing 10,000 shares, and caused to be issued in place thereof seven separate certificates made out as follows: No. 2, for 1,432 shares, to James C. Brady; No. 3, for 1,428 shares, to Helen McMahon Brady; No. 4, for 1,428 shares, to James C. Brady for Elizabeth J. H. Brady; No. 5, for 1,428 shares, to James C. Brady for Ruth Brady; No. 6, for 1,428 shares, to James C. Brady for James C. Brady, Jr.; No. 7, for 1,428 shares, to James C. Brady for Victoria Mary Pery Brady; No. 8, for 1,428 shares, to James C. Brady for Genevieve Brady.

Helen McMahon Brady was decedent's wife and Elizabeth J. H., James C., Jr., Ruth, Victoria Mary Pery and Genevieve were his children, all of said children being minors at the date of issue of this stock. These seven certificates were delivered to decedent on or about the date of issue by Mr. Griffin, president of the corporation, who was also decedent's business associate. On September 14, 1923, decedent returned to Mr. Griffin certificates Nos. 4 to 8 inclusive; told him that " he had explained the Brady Securities Company to the children, that he had given the certificates to them " and instructed him to put them in the Central Union Trust Company. The certificates were delivered to the trust company where they have remained since that date. On or about September 17, 1923, decedent turned over to Mr. Griffin certificates No. 2 and No. 3, told him the stock was his wife's, and Mr. Griffin caused these also to be placed with other securities of decedent in the trust company. Certificate No. 2, issued to decedent, had been transferred by indorsement to decedent's wife over his signature, and certificate No. 3, issued to Mrs. Brady, had been transferred by her in blank by indorsement by her when decedent returned the same to Mr. Griffin. The five certificates in decedent's name for his children were kept in separate accounts in the trust company, while the other two, No. 2 and No. 3, were placed with other securities in decedent's own vault and retained by the trust com-

pany in his own account. These seven certificates have continuously remained in the trust company since decedent's death. An officer of the Central Union Trust Company testified that at no time would it deliver any of these certificates to any one except to decedent or on decedent's express order, or on the order of Mr. Griffin who held decedent's power of attorney.

Mr. Griffin testified that from time to time decedent would ask him " what the children had " and he would prepare a list of all the securities they had including the stock in the Brady Securities and Realty Corporation. Decedent would look over these statements and hand them back to Mr. Griffin. There is also evidence that on various occasions decedent referred to the stock of this corporation as being owned by his wife and children, and Mr. Griffin testified that " Mr. Brady told me that he had called the children together, explained the nature of the Brady Securities Company, what it meant, and given the securities to the children and to Mrs. Brady. They gave them back to him to be put in their account. I presumed that Mr. Brady had handed the certificates, as he said, to the children."

The executors contend that they have established the fact that decedent made a gift *inter vivos* of this stock to his wife and children, and the special guardian joins with the executors in their contention. Counsel for the State Tax Department moves to dismiss the proceeding and urges that there was no gift *inter vivos;* that decedent at all times retained control and possession of the stock, and that the evidence shows but the creation of several trusts by decedent for the benefit of persons named which were to take effect and become operative only upon his death, and that all of these shares are subject to the provisions of the Transfer Tax Law. The question at issue is whether or not the evidence shows a completed gift *inter vivos.*

The elements necessary to constitute a valid gift are an intent on the part of the donor to give and an actual delivery of the thing given to or for the donee in pursuance to such intent and an acceptance on the part of the donee, which acceptance, however, may be implied where the gift otherwise complete is beneficial to the donee. (*Beaver* v. *Beaver*, 117 N. Y. 421; *Farmers' Loan & Trust Co.* v. *Winthrop*, 238 id. 477.)

A perfected gift *inter vivos* is an executed contract in the law, and can no more be revoked by the donor without the consent of the donee than if there was a valuable consideration moving from the latter to the former; but the gift must be perfected and to which nothing more is essential to pass title. There must be a delivery, and though there may be a constructive delivery, that

delivery, whether actual or constructive, must be such that it will operate to divest the donor of possession and of any dominion over the subject of the gift.

There is no direct proof in this proceeding that a delivery was made and there is a total absence of any evidence that either the wife or any of decedent's children ever exercised any dominion over these securities whatsoever. The certificates of stock were first in the hands of Mr. Griffin, the president of the company, who personally delivered them to decedent in September, 1923. A few days later decedent returned the stock to Mr. Griffin and instructed him to deposit it in the trust company where decedent's securities were kept. No instructions were given that institution that would warrant a delivery by it of any of these securities to either the widow or children. Certainly they had no access to decedent's safe deposit vault and it is obvious that Mr. Brown, the trust company's officer, stated a fact when he testified that the institution would deliver these securities only upon an order of decedent, or Mr. Griffin, who held his power of attorney.

True we have the statements made to Mr. Griffin by the decedent, but those statements alone will not take the place of a delivery.

" Where the donor remains in possession, or it is not shown that the gift was ever in the possession of the donee or in the possession of some person for him, his declarations, however often repeated, that he had made the gift will be unavailing to support the averment of a gift." (Thornton Gifts, § 146.)

The language of the court in *Hamlin* v. *Hamlin* (192 N. Y. 164) may well be applied here. Judge GRAY, writing for the court, says (p. 171): " Much evidence was introduced by the plaintiff for the purpose of showing what Mr. Hamlin's intentions were with reference to the properties he had bought, as declared upon several occasions to various persons, and reliance is placed upon it as supporting the judgment. These declarations were made in conversations of a most casual nature and were of the purport, that he was going to give the house to his wife, or that he had made a wedding present of it to her, or that it was his wife's house, or that the house belonged to her. These conversations were, at various times, with real estate agents, friends, a house decorator, a painter, an architect, a physician, or with his wife's father, and were quite inadmissible to affect the absoluteness of the title of the deceased."

The burden of proof is upon the donee to show that the transaction is a gift and when his right to the property is challenged, and title is shown to have been once in the donor, and the circum-

stances attending this proof do not incidentally overturn the proof of ownership in him, then the donee must by evidence overcome the *prima facie* title of the donor, and show a transaction which gives him title by gift. (*Doty* v. *Willson*, 47 N. Y. 580.)

The law never presumes a gift and proof of intent and delivery are essential. (*Matter of Crawford*, 113 N. Y. 366; *Curry* v. *Powers*, 70 id. 212.)

The evidence must show a delivery with an intent to divest title and possession of the donor, and must be inconsistent with any other intention. (*Matter of Bolin*, 136 N. Y. 177; *Wadd* v. *Hazelton*, 137 id. 215, 221.)

In the present proceeding such evidence is entirely lacking. What combination of circumstances will bring a case within the legal definition of a gift is essentially a matter of evidence and not of law, and each particular case must depend upon its own circumstances. It may well be that a declaration by an alleged donor of an intention to make a gift and the subsequent possession by the donee of the thing intended to be given, create together a strong presumption that the gift was made, but we have no such circumstances here. Other than the statements made by decedent there are no circumstances here that would warrant a finding that there was such a delivery as would invest the donee with control and dominion over these securities and to absolutely divest donor of his dominion and control. Certainly no such acts on the part of the decedent may be found in the evidence as will admit of no other interpretation than that testator retained no legal rights over this property. (See *Wadd* v. *Hazelton, supra*, opinion of PECK-HAM, J., p. 219.)

No act on the part of decedent may be found in the evidence that would indicate that he had parted with or intended to part with the control of these securities. When his daughter Elizabeth (referred to as Jane in testimony) became of age, no act on the part of decedent would indicate that he had invested her with control or dominion over this stock or the title thereto. The securities were not turned over to her nor was the trust company notified that they belonged to her. To the contrary, about the time of this daughter's marriage, decedent wrote her a letter in which he refers to these shares as being in " Trust No. 3419 *established by me for your account some time ago.*" The stock was never transferred on the corporation's books or even by indorsement on the certificate, and the trust company continued to treat it as a trust.

While it is not essential at this time to determine whether or not a trust was created, it is quite evident to me that the executors

and the special guardian have failed to sustain the burden of proving a gift *inter vivos*. Nor have they proven a trust, for before it can be said that the trust company became trustee for decedent's children it must be shown that there was a delivery of these securities to it with intention on the part of decedent to vest title in it for the purpose of creating such trust. (*Martin* v. *Funk*, 75 N. Y. 134; *Orton* v. *Tannenbaum*, 194 App. Div. 214.)

In *Young* v. *Young* (80 N. Y. 422) it appeared that deceased resided at home of his son, the alleged donee of certain bonds which deceased placed in a safe in his son's house to which both had access and in which both kept property. After decedent's death two envelopes containing the bonds were found in the safe indorsed with the statement that the bonds were the property of decedent's son, but the interest due thereon was reserved to decedent during his lifetime. The court held that a gift could not be sustained, and says (p. 435): "It is impossible to sustain this as an executed gift, without abrogating the rule that delivery is essential to gifts of chattels *inter vivos*. It is an elementary rule that such a gift cannot be made to take effect in possession *in futuro*. Such a transaction amounts only to a promise to make a gift, which is *nudum pactum*. * * * There must be a delivery of possession with a view to pass a present right of property."

The requirement of proof of delivery by the donor is founded on public policy to prevent an imposition or mistake. (*Young* v. *Young, supra; Beaver* v. *Beaver, supra*.)

In the case at bar the decedent at all times retained possession of these securities, and by reason of the fact that he could at any time prior to his death have removed them from the depository in which they had been deposited by his direction, the evidence required to sustain a gift under these circumstances must be clear and convincing for it must be remembered that the donor's lips are sealed.

I entirely agree with the special guardian that a gift need only be proved by a fair preponderance of evidence, but let us state the rule as laid down by the Court of Appeals. Judge CRANE, writing for the court in *McKeon* v. *Van Slyck* (223 N. Y. 392), says: "In civil cases a plaintiff is never required to prove his case by more than a preponderance of evidence. This is as true of actions against an executor, founded on claims put forward for the first time after the death of the testator, as it is of other actions. (*Lewis* v. *Merritt*, 113 N. Y. 386.) No doubt in determining whether the preponderance exists, the triers of the facts must not forget that death has sealed the lips of the alleged promisor. They may reject evidence in such circumstances which might satisfy

them if the promisor were living. They must cast in the balance the evidence offered upon the one side and the opportunities for disproof upon the other. They may, therefore, be properly instructed that to make out a preponderance, the evidence should be clear and convincing."

Counsel for the executors urges that a series of incidents occurred having for their ultimate object the transfer of the ownership of this property from decedent to his wife and children. But this series of incidents comprises the formation of the corporation; the transfer of the title to the property by decedent to the corporation; the issuance of the stock to decedent; the turning in of decedent's certificate and the issuance of seven certificates in place thereof and the delivery of these certificates to the trust company. The answer may be found in *Beaver* v. *Beaver* (*supra*) where Judge ANDREWS, writing for the court, says: " We cannot close our eyes to the well-known practice of persons depositing in savings banks money to the credit of real or fictitious persons, with no intention of divesting themselves of ownership. It is attributable to various reasons; reasons connected with taxation; * * *."

It is pertinent to note that in *Beaver* v. *Beaver* (*supra*) the court reached a conclusion that " where a deposit is made in the name of another, without any intention on the part of the depositor to part with his title, he would be quite likely to select a member of his own family to represent the account, and in this case this is the natural explanation of the transaction."

Not only is there a failure to prove an intent on the part of James Cox Brady to make these gifts or any of them, but the proof is equally defective as to delivery. And the rules of evidence as to gifts are not relaxed because of the relationship of husband and wife or parent and child. (*Matter of Van Alstyne*, 207 N. Y. 298; *Shuttleworth* v. *Winter*, 55 id. 624; *Matter of Schroeder, No. 1*, 113 App. Div. 204.)

What is sufficient proof to establish a gift depends upon the evidence in each particular case and while oral evidence in one case might be sufficient to establish the claim of a donee, it might well be that such evidence will utterly fail in another case because of the circumstances attending the transaction, regardless of the credibility of the witnesses. But to reiterate, mere declarations are not sufficient to establish a gift, and, therefore, the person on whom the burden devolves to establish such gift must prove something more than the declarations of the donor that a gift has been made. And the statement of a witness, a friend and business associate of decedent, that decedent said he had given the subject-

matter of the gift to the donee, coupled with the fact that decedent owned the property and had the right to part with it, is insufficient alone to establish such gift.

" The subject of the gift may be chattels, choses in action, or any form of personal property, and what constitutes a delivery may depend on the nature and situation of the thing given. The delivery may be symbolical or actual, that is, by actually transferring the manual custody of the chattel to the donee, or giving to him the symbol which represents possession. * * * The acceptance, also, may be implied where the gift, otherwise complete, is beneficial to the donee. But delivery by the donor, either actual or constructive, operating to divest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. Anything short of this strips it of the quality of completeness which distinguishes an intention to give, which alone amounts to nothing, from the consummated act, which changes the title. The intention to give is often established by most satisfactory evidence, although the gift fails. Instruments may be ever so formally executed by the donor, purporting to transfer title to the donee, or there may be the most explicit declaration of an intention to give, or of an actual present gift, yet unless there is delivery the intention is defeated." (*Beaver* v. *Beaver*, *supra*.)

It is the judgment of this court that no gift *inter vivos* of the 10,000 shares of stock of Brady Securities and Realty Corporation, or any part thereof was made by the decedent James Cox Brady to his wife and children, and that the same is part of said decedent's estate.

Decree may be entered accordingly.