In the Matter of the Estate of Samuel W. Peck, Deceased.

Surrogate's Court, New York County, January 1, 1930.

*Wolf & Kohn* [*Sol Kohn, Herbert W. Haldenstein* and *John F. Moroney* of counsel], for the estate of Samuel W. Peck.

*Curtin & Glynn* [*John J. Curtin* and *Charles J. Miville* of counsel], for Lilian A. Peck, as general guardian of James D. Peck, an infant.

*Hyman Turchin*, for Sailing W. Baruch & Co.

FOLEY, S. The executors seek to obtain an adjudication that certain securities now in the possession of a·stock brokerage firm, carried in the name of James D. Peck, the infant son of the decedent, are the property of the estate. The general guardian of the infant asserts that the shares of stock in the account belong to his ward by reason of a gift or a trust for his benefit made by the testator. The disputed property consists of 1,000 shares of Bloomingdale Bros. stock, 2,000 shares of General Motors Company common stock, and 525 shares of Kroger Grocery and Bakery Company common stock. A balance exists as a lien in favor of the brokers in the sum of approximately $60,000. The equity in the account is substantial. The account was opened by the decedent on June 11, 1926. He died on March 23, 1929. The infant was about twelve years old at the time of the opening of the account. He is the only child. At the inception of the transaction the decedent wrote to his brokers a letter guaranteeing the account of " Mr. James D. Peck " and agreeing " to be responsible for any ·losses that may arise·through any transaction made for the account." No payment of money or deposit of securities was made upon the opening of the account. The transactions were numerous, frequent and speculative. The securities traded in were common stock of over thirty corporations. Oral evidence of the circumstances surrounding the maintenance of the account and of the declarations of the testator has been submitted in addition to the stipulation. of the conceded facts and a transcript of the account.

Upon the completed record I hold that these securities constituted assets of the estate, that title to them was never vested in the son, James D. Peck, by a valid gift, nor was any enforcible

trust established for his benefit. The appearance of the name of the son in the account was clearly for the convenience of the testator and without intent to vest title to the securities in the son. The circumstances give rise to an inference that the account was carried in the name of the son for secrecy or for some other expedient. Three other accounts maintained by the testator were in other names. One of these was in his own name. One was designated by a number. All three were concededly his. All of the orders for purchases and sales were given by him and all statements were rendered to him. He withdrew from the disputed account approximately $213,000, of which $167,000 represented the value of securities withdrawn by him in kind, and about $46,000 in checks. Within the amount withdrawn by him was income in the form of dividends or interest on credit balances aggregating $30,000. Every dollar of these withdrawals was concededly retained by the testator for his own use and purpose. None of it was paid to the infant or deposited in any account maintained for him. The securities withdrawn in kind were likewise taken over by the testator and transferred to his own name. None of them was assigned to the infant. To meet this array of conceded facts the general guardian has submitted the evidence of four witnesses. They testified to declarations of the testator that he had opened a stock account for his son, that he had mentioned two of the specific securities which remained in the account at his death and stated he intended to buy them for his son, that he had bought such securities for his son, and that the boy would be independent. These declarations were vague, general and indefinite. His actual handling of the account belie them. His withdrawals of securities and cash therefrom for his own benefit entirely destroyed any inference that the account was conducted for the son. Moreover, his statements that the boy would be well taken care of or would be independent are consistent with the disposition made by him in his will. The securities or their proceeds will fall into the residuary trust created for the son as life tenant. Its terms contain directions to pay the son certain installments of principal, viz., the sum of $250,000 when the son attained the age of twenty-five years, and similar amounts when he attained the ages of thirty and thirty-five years. This careful and conservative testamentary plan for the protection of his son is inconsistent with any intent to make an outright gift of the securities available to him on attaining his majority. The evidence utterly fails to establish the essential elements of a valid gift — intent and delivery — either actual or symbolic. There was no evidence of any purpose by the testator to surrender or divest himself of title to the securities

or to the proceeds of the sales of stock. On the other hand, the undisputed course of conduct of the decedent conclusively shows the retention of dominion for his own individual purposes over the account and the income and profits arising from it. One transaction is especially significant of this purpose. In December, 1927, eighteen months after its inception, he withdrew from this account 3,400 shares of various securities. Other securities were withdrawn at the same time from the account in his own name. He transferred all these securities to himself in a custodian account in a trust company and paid off the debt balances on the securities withdrawn from both accounts with the proceeds of a loan made by the trust company. The continued retention of control by the testator is also evidenced by the last withdrawal from the account on March 6, 1929, shortly before his death, when he withdrew jointly from the account in his son's name and from his own accounts the sum of $3,413.25, of which $1,900 was charged against the account in dispute here. The check for this withdrawal was deposited in his personal bank account. At the time of this payment the only securities remaining in the account were those left there at his death.

In *Beaver* v. *Beaver* (117 N. Y. 421, 428) it is stated: " The elements necessary to constitute a valid gift are well understood, and are not the subject of dispute. There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and on the part of the donee, acceptance. * * *. But delivery by the donor, either actual or constructive, operating to divest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. Anything short of this strips it of the quality of completeness which distinguishes an intention to give, which alone amounts to nothing, from the consummated act, which changes the title. The intention to give is often established by most satisfactory evidence, although the gift fails." Other authorities defining the requisites of a valid gift support the conclusion reached here. (*Matter of Van Alstyne,* 207 N. Y. 298; *Matter of Crawford,* 113 id. 560; *Young* v. *Young,* 80 id. 422; *Matter of Brady,* 133 Misc. 795; *Ambrosius* v. *Ambrosius,* [C. C. A.] 239 Fed. 473.)

Similarly the evidence fails to establish any enforcible trust in favor of the son as beneficiary. No unequivocal declaration of trust by the testator nor any of the essentials of a valid trust has been proven. (*Farmers' Loan & Trust Co.* v. *Winthrop,* 238 N. Y. 477; *Brown* v. *Spohr,* 180 id. 201; *Shea* v. *Crofut,* 203 App. Div. 210; *Orton* v. *Tannenbaum,* 194 id. 214.)

The conclusion is inevitable that the account was maintained in the name of the son for convenience only. Submit decree on notice declaring the securities to be assets of the estate, subject to the lien of the brokers, with a specific determination that neither the account nor its proceeds nor the securities remaining were the property of the infant, James D. Peck.