# Cases

# SECOND DEPARTMENT

IN THE

# APPELLATE DIVISION,

## April, 1901.

BARBARA SCHWIND, as Committee of the Person and Estate of
EMMA SCHWIND, an Alleged Incompetent Person, Appellant, *v.*
ANTHONY J. IBERT, as Receiver of the Property of BARBARA
SCHWIND, Respondent.

*Savings bank account — deposit by a mother in her own name and that of her daugh-
ter — what facts do not establish either a gift or a trust in favor of the daughter.*

Evidence that a woman opened an account in a savings bank in the joint names
of herself and her daughter, and subsequently testified: "I put the money
there for my daughter so that she may have something to live on," "I said
to the girl I am putting this money in the bank for you," is insufficient to war-
rant a finding of a gift of the bank account to the daughter or of a trust
therein for her benefit, where it appears that the moneys deposited in the
account belonged solely to the mother; that at the time it was opened the
mother did not say anything to the officers of the bank about it; that the daugh-
ter did not leave her signature at the bank; that the mother retained exclu-
sive possession and control of the bank book and made all of the deposits
and withdrawals, and that she testified on her examination in proceedings
supplementary to execution that the money belonged to her and not to her
daughter.

APPEAL by the plaintiff, Barbara Schwind, as committee of the
person and estate of Emma Schwind, an alleged incompetent per-
son, from a judgment of the Supreme Court in favor of the defend-
ant, entered in the office of the clerk of the county of Kings on the
9th day of July, 1900, upon the decision of the court rendered after
a trial at the Kings County Special Term.

*John C. Judge*, for the appellant.

*Francis A. McCloskey*, for the respondent.

GOODRICH, P. J.:

The findings of fact by the Special Term establish, on sufficient evidence, the following facts: For some years prior to 1899 Barbara Schwind was engaged in the business of buying and selling lager beer, and in that year she opened an account in the Williamsburgh Savings Bank under the name of "M. Barbara Schwind and Emma Schwind," the latter being her daughter. She alone deposited in and drew moneys from the account, and in October, 1898, there was a balance in her favor of $3,115.80. None of the moneys belonged to or were contributed by Emma, and the bank book was always in the exclusive possession and control of Barbara.

The Frank Ibert Brewing Company, having loaned money and sold goods to Barbara, recovered a judgment against her in June, 1899, for $936.54, upon which execution was issued and returned unsatisfied. Supplementary proceedings were instituted under which Barbara, Emma and an officer of the bank were examined, and, in December, 1899, the court appointed Anthony J. Ibert as receiver of the property of Barbara. The usual injunction order restrained Barbara from withdrawing moneys from the bank.

In October, 1899, Barbara was appointed by the court as committee of Emma as an incompetent person, and the bank was ordered to pay over to her the money on deposit in the bank. To this proceeding neither the brewing company nor the receiver was a party.

On January 3, 1900, Ibert, as receiver, demanded the payment to him by the bank of the deposit in question, and, such payment being refused, brought an action against the bank, Barbara, as committee and individually, and Emma for such deposit.

On January eleventh Barbara, as committee, commenced this action against the bank to recover the amount of the deposit. The bank obtained an order of interpleader by which Ibert, as receiver, and Barbara individually were substituted as parties defendant in place of the bank. Thus all parties were before the court.

On these facts the court found as a conclusion of law that the deposit belonged to Barbara individually and that Emma never had any right, title or interest therein; that the proceedings to appoint

Barbara as committee of Emma were brought with the fraudulent intent to avoid the application of the deposit to the payment of Barbara's debts, and that the receiver was entitled to the deposit and the pass book ; and judgment was accordingly entered, from which this appeal is taken.

It is evident that the ownership of the deposit is the question underlying this controversy. If Barbara neither gave Emma an undivided interest in the fund nor intended to create a trust therein for her, the judgment must be affirmed. The evidence discloses no facts which are sufficient to establish either a gift or a trust. There was no transference of an interest in the deposit nor any delivery of the symbol, the bank book, to Emma. On the examination in supplementary proceedings Barbara testified, and she repeated at the trial, that the money was hers and not Emma's ; that at the time of opening the account she did not say anything to the officers about the account; that Emma did not leave at the bank her signature to the account; that the account was opened simply in the name of Barbara and Emma, and that Barbara has always had the bank book in her possession and control.

The only evidence which Barbara offered to prove the gift of the deposit to Emma or a trust for her is the testimony of Barbara, when she said : " I put the money there for my daughter so that she may have something to live on," and " I said to the girl I am putting this money in the bank for you." These facts constituted no divestiture of Barbara's possession, dominion or control over the fund.

In *Beaver* v. *Beaver* (117 N. Y. 421), where the question before the court was as to the ownership of a savings bank account, the court said (pp. 428, 429) : " The plaintiff's title to the fund must depend, therefore, upon the question of gift. The elements necessary to constitute a valid gift are well understood and are not the subject of dispute. There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and on the part of the donee, acceptance. * * * But delivery by the donor, either actual or constructive, operating to divest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. Anything short of this

strips it of the quality of completeness which distinguishes an intention to give, which alone amounts to nothing, from the consummated act, which changes the title."

The doctrine thus announced was subsequently reiterated by the court on another appeal, in 137 New York, 59.

In *Wadd* v. *Hazelton* (137 N. Y. 215) the court said (p. 219): " While it is true that no particular form of words is necessary to create a trust of this nature, and while it may be created by parole or in writing; and may be implied from the acts or words of the person creating it, yet it is also true that there must be evidence of such acts done or words used on the part of the creator of the alleged trust, that the intention to create it arises as a necessary inference therefrom and is unequivocal; the implication arising from the evidence must be that the person holds the property as trustee for another. The acts must be of that character which will admit of no other interpretation than that such legal rights as the settlor retains are held by him as trustee for the donee; the settlor must either transfer the property to a trustee or declare that he holds it himself in trust. An intention to give, evidenced by a writing, may be most satisfactorily established, and yet the intended gift may fail because no delivery is proved. And where an intention to give absolutely is evidenced by a writing which fails because of its non-delivery, the court will not and cannot give effect to an intended absolute gift by construing it to be a declaration of trust and valid, therefore, without a delivery. These principles have been decided in this court and must be regarded as settled."

It was said in *Young* v. *Young* (80 N. Y. 422, 430) that " The transaction is sought to be sustained in two aspects. *First*, as an actual executed gift, and, *secondly*, as a declaration of trust. These positions are antagonistic to each other, for if a trust was created, the possession of the bonds, and the legal title thereto, remained in the trustee. In that case there was no delivery to the donee, and consequently no valid executed gift, while if there was a valid gift, the possession and legal title must have been transferred to the donee, and no trust was created. As each of these theories thus necessarily excludes the other, they must be separately considered." In the light of this decision, we search the record for evidence that the transaction falls within either class, and we are unable to find any

evidence that there was either a gift within the authority of *Beaver*
v. *Beaver* (*supra*), or a trust within the authority of *Wadd* v.
*Hazelton* (*supra*).

It follows that the fund is the property of Barbara, and that the
judgment should be affirmed.

All concurred.

Judgment affirmed, with costs.