Dykman, J.
These are appeals from the judgments entered in the above-entitled actions upon the report of a referee dismissing the complaint of the plaintiff in each case, with costs, and also from three orders granting an extra allowance to the defendants. *258 The complaint in each case alleges that the testator of the defendant Benjamin L. Guion had in his possession large sums of money, upward of $10,000 in the M. A. Guion Case, and upward of $10,000 in the Hildrick Case ; that Guion died, leaving such trust incomplete and unperformed; that the plaintiff had been appointed trustee in the place and stead of B. L. Guion by order of the supreme court,—and prayed that the defendants, as executors of Guion, account for the trust funds held by him during his lifetime, and pay the same to the plaintiff: The answer in both cases-contains a general denial, and alleges payment of all moneys and property in Guion’s hands as a part of the alleged trust, and also that the plaintiff is not the real party in interest. The answer also sets up the six-years statute of limitations in both cases and the ten-years statute in the M. A. Guion Case. On the trial in the M. A. Guion Case it was proved by the plaintiff that B. L. Guión opened an account in the Manhattan Savings Institution bn the 5th day of June, 1867, in form B. L. Guion for M. A. Guion, and made various deposits therein, amounting in all, with interest, to $9,395.27, that Guión drew out of said account all of said nioneysin different amounts on different days; and the plaintiff claims the whole amount of the account, with interest on the amount of each draft from the date thereof. The plaintiff further proved that B. L. Guion opened an account in the East River Savings Institution on the 4th day of January, 1870, in form B. L. Guion in trust for M. A. Guion, and made various deposits therein; that such account was closed on the 2d day of April, 1877, and the balance of the account, amounting to $19.29, was transferred to a new account opened by B. L. Guion on that day in the same bank, in form B. B. Guion in trust for M. A. Guion ; that Guion drew out of those foregoing accounts the sum of $23,111.78 in different accounts on different days; and the plain tiff claims the whole of those amounts, with interest.. The plaintiff further proved that B. L. Guion opened an account in the Dry Dock Savings Institution on the 3d day of April, 1877, in form B. L. Guion in trust for M. A. Guion, and made various deposits therein; that Guion drew out from that account the sum. of $6,056.01 in different amounts, on different days.; and. plaintiff claims the whole of those amounts.. Oh the 16th day of July, 1883, B. L. Guion opened an account in the New York Bank, in the form of B. L. Guion in trust for M. A. Guion, and made deposits therein to the amount of $2,597.04, no part of which was withdrawn by him. The plaintiff further proved that Guion had collected dividends on stocks which he held in trust for M. A. Guion amounting to $9,112.50, which plaintiff claims, with interest. The plaintiff further proved that B, B, Guion had received a check from Williams and Guion for $2,502.91, drawn to the order of M. A. Guion, but did not claim to recover this amount. The whole dmount of the claim of the plaintiff in that action is upward of $100,000. After the death of B. B. Guión, the East River, Dry Dock, and New York Bank books were found in Mr, Guion’s safe, and were delivered to or taken possession of by M. A. Guion, and the amounts remaining undrawn at Guion’s death were after- *259 wards drawn out by her, namely, $1,972.48 from the East Eiver Bank, $797.59 from the Dry Dock Bank, and $2,597 from the Mew York Bank, making in all, $5,367.21. The plaintiff’s proof on the trial in the A. E. Hildrick Case was that B. L. Guion opened an account in the Dry Dock Savings Institution on the 3d day of July, 1879, in form B. L. Guion in trust for A. E. Hildrick, and made various deposits therein; that Guión drew out of that account the sum of $1,045 in different amounts on different days, and the plaintiff claims to recover the whole of that amount. The plaintiff further proved that B. L. Guion opened an account in the East River Savings Institution on the 22d day of December, 1879, in form B. L. Guion in trust for A. E. Hildrick, and made various deposits therein, and Guion drew out of that account the sum of $1,850 in different amounts on different days, which the plaintiff claims to recover. On the 4th day of January, 1886, Guion opened an account in the New York Bank, in form B. L. Guion in trust for A. E. Hildrick, and deposited therein $500, no part of which was withdrawn by him. After Mr. Guion’s death, these three books were found in Mr. Guion’s safe, and were delivered to or taken possession of by Mrs. J. B. Hildrick, the mother of A. E. Hildrick ; and the amounts remaining and not drawn out at Guion’s death were afterwards drawn out by A. E. Hildrick, $174.44 from the East River Bank, $597.50 from the New York Bank, $387.04 from the Dry Dock Bank,—in all, $1,158.98. The plaintiff produced no evidence of any declaration of trust respecting any of the savings bank books, other than the form of the bank books themselves. There is nothing to indicate Mr. Guion’s intention in opening the accounts in the way he did, and the plaintiff’s only evidence of the existence of the trust is the bank books, in form “ in trust.” Neither M. A. Guion nor A. E. Hildrick knew of these bank accounts until after Guion's death, and the books had not been delivered to them or to any one else, but had always remained in Guion’s possession. All the money deposited in the savings bank belonged to M. A. Guion.
In the case of Martin v. Funk, 75 N. Y. 134, it was decided by the court of appeals that such a deposit, unexplained, constituted a trust; but in the same case it was said :
“ It is not necessary to decide that surrounding circumstances may not be shown to vary or explain the apparent character of the acts, and the intent with which they were done.”
In the subsequent case of Mabie v. Bailey, 95 N. Y. 206, Judge Andrews says, in delivering the opinion of the court of appeals:
“ The court in Martin v. Funk left undecided the point whether, in respect to such a transaction, surrounding circumstances may not be shown to vary or explain the apparent character of the acts, and the intent with which they were done. If it was now necessary to decide that point, I should incline to the opinion that the character of such a transaction, as creating a trust, is not conclusively established by the mere fact of the deposit, so as to preclude evidence of contemporaneous facts and circumstances constituting the res gestee, to show that the real motive of the depositor was not to create a trust, but to accomplish some independent and different *260 purpose, Inconsistent with the intention to divest himself of the beneficial.ownership of the fund.”
While, therefore, the opening of the account by Guion in the different banks in the names he did constitutes a trust without explanation, it becomes necessary to ascertain whether the facts and circumstances surrounding the transaction disclose a motive on the part of Guion to create a trust in favor of the several persons named in the bank books as beneficiaries, or whether his real motive was to accomplish an independent and different purpose, inconsistent with the intention to divest himself of the ownership of the property. A preliminary statement of certain facts and circumstances will conduce to a better understanding of the situation: B. L. Guion died in March, 1887, leaving a last will and testament, and the defendants in these actions qualified as executors thereof. In June, 1887, the executors opened the safe of Guion in the Stuyvesant Safe Deposit Company, and, among other property found there, there were eighteen savings-bank books,—one in the name of B. L. Guion personally ; two, Mrs. J. D. Hildrick; four, Mrs. J. D. Hildrick, in form “ in trust for her two children, Alfred E. and Elenor Hildrick ”; two, B. L. Guion, in form in trust for M. A. Guion ; three, B. L. Guion, in form in trust for A. E. Hildrick; three, B. L. Guion, in form in trust for E. Hildrick; one, B. L. Guion, in form in trust for H. Hunt; one, B. L. Guion, in form in trust for Mary G. Hunt; one, B. L. Guion, in form in trust for Isaac M. Hunt. Mrs. Guion took possession of the two books in form in trust for herself, Mrs. Hildrick .took possession of the twelve books in her own name individually, or in form in trust for her children, and Isaac M. Hunt took the books in form in trust for himself and Mary G. Hunt and H. Hunt, who were his sisters. Benjamin L. Guion, the defendant’s testator, died in March, 1887, at the age of 82 years. For upward of 20 years before his death he had not been engaged in business other than investing and taking care of his money, and stock speculations. He lived on the income of his money without any business. He deposited his money in savings banks, in almost all cases- in form in trust for other persons related to him by blood or marriage. At least 27 of the accounts opened by Guion in form in trust were so opened by Guion without the knowledge or consent of the persons whose name Guion used, and the moneys belonged to Guion in each case. He treated the accounts absolutely as. his own, withdrawing funds from each account, and making new deposits therein from time to time, and in most cases closing the accounts. The persons whose names Guion used never saw or heard of the accounts until after his death, and some of them not until the books were offered in evidence on the trial. The total amount of deposits made by Guion, with interest, amounts to $80,000 in the accounts in form in trust, and only $26,000 in his personal account. B. L. Guion opened three accounts in the Dry Dock Bank about the year 1860 or 1861—one in form B. L. Guion in trust for Mary G. Hunt, one in form B. L. Guion in trust for-Harriet H. Hunt, and one in form B. L. Guion in trust for. Annie. *261 Guion. At the time he opened these accounts he delivered the bank books to the beneficiaries, and at the same time stated to them that he had opened the account for them ; that he had made a deposit for them ; that he did not need the money himself, the money having come from his mother’s estate ; and he never after-wards made” deposits in or drafts from said accounts. B. L. Guion, on the 23d day of May, 1872, opened an account in' the Seamen’s Bank, in form B. L. Guion in trust for B. G. Williams, .and delivered the book to him, and never thereafter exercised any control over the account These acts are very significant. They show the line of conduct adopted by Guion when he intended to create a trust. He-did not retain the bank books in his possession, but delivered them to the beneficiaries, and informed them that the account was open for them. He neither deposited in that account thereafter nor drew any money therefrom. In all the other accounts he continued his deposits and withdrawals, closed up many of the accounts, and surrendered the bank books to the banks, without communicating with any of the persons whose names he used. He treated the money and the books as his own. It is inconceivable that Guion intended to divest himself of the beneficial ownership of his property, as he’ was dependent upon his income for the support of himself and his wife, and was not in business for upward of 20 years before his death. To hold that his intention was to create trusts by the deposits in the savings banks is to hold that he deliberately not only stripped himself of all means of support, but also rendered himself liable for much more money than he ever had. Yet Guion is conceded by all to have been a man of sound business and financial ability, good sense, high moral character, and unquestioned integrity. The memorandum found in Guion’s safe after his death, to the effect that the bank books belonged to those in whose names they stood, falls far short of repelling the natural inference to be drawn from all the other facts and circumstances in the case. In the case of Beaver v. Beaver, 117 N. Y., at page 430, 27 St. Rep. 405, Judge Andrews, in delivering the opinion of the court of appeals, said this:
“We cannot close our eyes to the well-known practice of persons depositing in savings banks to the credit of real or fictitious persons. It is attributable to various reasons connected with taxation, rules of the bank limiting the amount which any one individual may keep on deposit, the desire to obtain higher rates of interest where there is discrimination based on the amount of deposits, and the desire on the part of many persons to veil or conceal from others knowledge of their pecuniary condition. In most cases where a deposit of this character is made as a gift there are contemporaneous facts or subsequent declarations by which the intention can be established independent of the form of the deposit. We are inclined to think that to infer a gift from the form of the deposit alone would'in the great majority of cases, especially where the deposit was of any considerable amount, impute an intention which never existed, and defeat the real purpose of the depositor.’’
*262 The foregoing remarks are peculiarly applicable to this case, and in our view the facts and circumstances disclosed repel the presumption of any intention to create a trust. We think the referee reached a correct conclusion, and the judgments in both cases should be affirmed, with costs.
The three orders for additional allowance should0 be affirmed, with $10 costs in one case only, besides disbursements.
All concur.