spondents, I think it should not be exercised in cases where the original valuation is much more conclusively demonstrated than it was by the sale in the present case. Notwithstanding the circumstances of that sale, it may well be that the expert trustee was right in fixing the value of the decedent's real property at $200,000. I think the chances of an overvaluation by such an interested witness are very slight indeed. In no view was this proof in regard to the sale newly discovered evidence such as the Code contemplates as the basis for setting aside a judgment. It was rather newly created evidence.

I think the order appealed from should be reversed.

Decree of the Surrogate's Court of Kings county reversed, with costs. All concur.

(89 App. Div. 368.)

In re TOTTEN.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. IRREVOCABLE TRUST—SAVINGS BANK—ACT OF DEPOSITOR.
    The rules of a savings bank required the depositor of money, "if he wants to put it in trust," to give the name "of the person for whom he wishes to put it in trust." A depositor therein had accounts opened in the name of herself as trustee for a named beneficiary, of which the beneficiary acquired no knowledge till after the death of the depositor. Prior to her death the depositor had closed the accounts by withdrawing the money. Held, that the deposit was an irrevocable trust.

2. SAME—DECEDENT'S ESTATE—LIABILITY.
    Where one creates a trust in a fund deposited in bank, without the knowledge of the beneficiary, and later withdraws the amount, the beneficiary has a valid claim against the estate of the depositor on discovery of the trust after the depositor's death.

Appeal from Surrogate's Court, Kings County.

In the matter of the judicial settlement of the account of the surviving administrator of the estate of Fanny A. Lattan, deceased. From a decree (77 N. Y. Supp. 928) affirming the report of a referee rejecting a claim, the claimant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Reuben Leslie Maynard, for appellant.
George Richards, for respondents.

HIRSCHBERG, J. The decedent, Fanny A. Lattan, died intestate on March 19, 1900. Her net personal estate amounts to over $40,000, and a controversy has arisen upon the judicial settlement of the administrator's accounts over a claim made by her nephew Emile R. Lattan to the proceeds of two savings bank accounts deposited by the deceased in her own name as trustee for him, and drawn out by her in her lifetime.

In the year 1884, and prior to the opening of the accounts in question, the claimant's father turned over to the deceased, who was his sister, and to another sister in conjunction with her, all his property, amounting to about $20,000, for their management, free from

any instructions from him. No account has ever been rendered to him for this property. The deceased made deposits of money at various times in her own name in trust for various persons other than the claimant, but the books representing the accounts have all been delivered to the beneficiaries, and no question arises concerning them. The passbook of the Irving Savings Institution, representing a third deposit of $502.03 made by the deceased to her credit in trust for the claimant, has been delivered to him by the administrator. The two disputed deposits were also made in the Irving Savings Institution; one account being opened on January 2, 1886, and closed out by draft of the deceased on July 8, 1898, and the other being opened on September 19, 1890, and closed out by draft of the deceased on November 15, 1894. The amount of the claim, covering both accounts, is $2,472.15, with interest from August 21, 1901, the date of the filing of the claim. The claimant was never notified of the fact of the deposits by the deceased.

The accounts were opened explicitly in the name of "Fanny A. Lattan, trustee for Emile R. Lattan." This was done by the deceased; she naming the beneficiary at the time of the original deposits, in compliance with a rule of the bank which required the depositor of money, "if he wants to put it in trust," to give the name "of the person for whom he wishes to put it in trust." Whether she used the money belonging to the beneficiary's father in opening the accounts does not appear, other than inferentially. There is no fact or circumstance, however, established in the case, tending in the slightest degree to qualify the effect of the declaration of trust recorded at the time of the deposit in either instance, or to show any intention on her part not to give her nephew the money, or not to permit him to derive the benefit of it; but, on the contrary, such facts as do appear tend to support the existence of an intention on her part to create a valid trust. She had an individual account or accounts in the Irving Savings Institution at the time of each respective deposit, and her account was below the limit of $3,000. She appears to have had accounts in other savings banks, as well as accounts in national banks, so that no mere motive of expediency could have prompted the form of the accounts in question, inasmuch as, if her entire deposits in the Irving Savings Institution exceeded at any time the limit of $3,000, she knew that other savings banks were accessible in which she could have placed these deposits at interest to her individual credit. She created a number of other trust accounts, as has been stated, many in identical form with those now under consideration, and which have been passed over to the benefit of the respective beneficiaries. In none of the accounts opened by her was a fictitious beneficiary designated. The claimant was closely allied to her by blood. In view of these facts, and the facts that she, in connection with her sister, had received possession of a large sum of money from the claimant's father, and that she had made no will, it cannot be doubted, in the absence of some proof to the contrary, that the same motive, viz., a desire to make a reasonable provision for him, either out of her own money or that of his father, inspired the creation of the three accounts which were opened for the benefit of

the claimant, and that, whatever may have prompted the deceased to draw out the deposits from two of the accounts, it was not done because of the absence of an intention to create a trust at the time when each deposit was made. The cases are quite numerous in which self-created trustees have felt themselves at liberty to deal as she did with the trust funds of their own creation, and their conduct has been held by the courts to neither involve necessarily any thought or knowledge of wrongdoing, nor to be inconsistent with the existence of the trust relation.

The claimant has been defeated in the court below because the learned referee and the learned surrogate are of the opinion that a valid trust cannot be created in the manner attempted by the deceased unless she dies before the beneficiary, leaving the account open and unexplained. The main authority for the conclusion reached is found in the remarks of Judge Andrews in the case of Beaver v. Beaver, 117 N. Y. 421, 430, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531, to the effect that the mere deposit of one's money in a bank to the credit of another, unaccompanied by any declaration of intention—the depositor receiving and retaining a passbook, the possession of which, by the rules of the bank, known to him, constitutes evidence of his right to withdraw the deposit—does not of itself authorize an affirmative finding that the deposit was made with the intent to give the money to the person in whose name the deposit is made. That was a case, however, in which it was sought to establish a gift, the deposit being in the name of the donee alone, there being no declaration of trust or any other declaration of intention; and the court found two essential elements of a gift lacking, viz., an intent to give and a delivery of the subject of the alleged gift. Page 429, 117 N. Y., page 942, 22 N. E., 6 L. R. A. 403, 15 Am. St. Rep. 531. The case had no intimate relation to the law governing the creation of trusts. It is true that the language employed by Judge Andrews is cited by Judge Bartlett in the subsequent case of Cunningham v. Davenport, 147 N. Y. 43, 47, 41 N. E. 412, 32 L. R. A. 373, 49 Am. St. Rep. 641, which was the case of a trust, and that the statement is therein made that the doctrine of the previous case (that is to say, the Beaver Case, supra), and others which are cited, is to the effect that:

"The act of a depositor in opening an account in a savings bank in trust for a third party, the depositor retaining possession of the bankbook, and failing to notify the beneficiary, creates a trust, if the depositor dies before the beneficiary, leaving the trust account open and unexplained."

What was said by Judge Bartlett in his opinion was no part of the decision of the case, which rested on the fact that the depositor affirmatively denied upon the stand that he intended to create a trust. But the language of Judge Bartlett by no means justifies the inferences drawn in this case in the court below, and which inferences are deduced from the Beaver Case, supra, and from Judge Bartlett's reference to it, herein quoted. Because a valid trust is created by the act of opening an account in the manner stated if the depositor dies before the beneficiary, leaving the account open and unexplained, it by no means follows that such a trust would not be

created if the depositor did not die, or if, although he died, he left the account opened, but explained, especially if the explanation was that he really intended to create a trust. Judge Bartlett, it is to be noted, also gave as one of the elements of a valid trust, according to the doctrine of the previous cases, that the depositor should fail to notify the beneficiary. But it is possible that, if the depositor did notify the beneficiary that he has created the trust, the trust would be destroyed by that act? It would be according to the logic of the present decision in this case, for a failure to notify the beneficiary is just as much a necessary part of the process of creating a trust, according to the citation from the Cunningham Case, as is the death of the benefactor and the lack of explanation. The learned judge gave the facts as they appeared in the cases then under review, stating that on those facts the court had found the creation of a trust; but there was certainly no suggestion that each and every of the facts stated was essential to the validity of the trust relation, or that a trust could not be created which would be valid and enforceable even if the account was closed by the depositor in his lifetime.

The Court of Appeals has never decided that an act such as that found herein to have been performed by the deceased in making a deposit in her own name in trust for another did not create a trust. It has never held that a solemn declaration of trust made in writing is not sufficient evidence of its own existence. In the leading case of Martin v. Funk, 75 N. Y. 134, 141, 31 Am. Rep. 446, Chief Judge Church said:

"In form, at least, the title to the money was changed from the intestate individually to her as trustee. She stated to the bank that she desired the money to be thus deposited. It was so done by her direction, and she took a voucher to herself in trust for the plaintiff. Upon these facts, what other intent can be imputed to the intestate than such as her acts and declarations imported, and did they not import a trust? There was no contingency or uncertainty in the circumstances, and I am unable to see wherein it was incomplete. The money was deposited unqualifiedly and absolutely in trust, and the intestate was the trustee. It would scarcely have been stronger if she had written in the passbook, 'I hereby declare that I have deposited this money for the benefit of the plaintiff and I hold the same as trustee for her.' This would have been a plain declaration of trust, and, accompanied as it was with a formal transfer to herself in the capacity of trustee, would have been deemed sufficient under the most rigid rules to be found in any of the authorities. It seems to me that this was the necessary legal intendment of the transaction, and that it was sufficient to pass the title. The retention of the passbook was not necessarily inconsistent with this construction. She must be deemed to have retained it as trustee. The book was not the property, but only the voucher for the property, which, after the deposit, consisted of the debt against the bank."

The learned chief judge then proceeds to consider the question whether the trust was destroyed by the fact that the author of it retained the instrument creating it until his death (that is to say, that he died leaving the account open and unexplained), and concludes, upon authority, that "this circumstance, among others, has been considered upon the question of intent, but is never deemed decisive against the validity of the trust." It is certainly a far cry from that holding to one which holds that the depositor must leave the account open and unexplained until his death in order to make the trust good and valid.

In Willis v. Smyth, 91 N. Y. 297, and in Mabie v. Bailey, 95 N. Y. 206, the Court of Appeals affirmed recoveries by the donees against the estates of the depositor where the deposits in trust, as in the case at bar, had been drawn out by the depositor in his lifetime. The right of action in a similar case was upheld in this department by the former General Term in Scott v. Harbeck, 49 Hun, 292, 1 N. Y. Supp. 788, and the authority of these decisions has never been overthrown. They have been frequently followed, in recognition of the doctrine that a deposit made in the form herein disclosed, while not conclusive evidence of the creation of a trust, is yet sufficient, and that when once created the trust cannot be revoked, in the absence of a power of revocation reserved. See Matter of Mueller, 15 App. Div. 67, 44 N. Y. Supp. 280; Decker v. Union Dime Savings Institution, 15 App. Div. 553, 44 N. Y. Supp. 521; Williams v. Brooklyn Savings Bank, 51 App. Div. 332, 64 N. Y. Supp. 1021; Harrison v. Totten, 53 App. Div. 178, 65 N. Y. Supp. 725; Robertson v. McCarty, 54 App. Div. 103, 66 N. Y. Supp. 327; Meislahn v. Meislahn, 56 App. Div. 566, 67 N. Y. Supp. 480; Robinson v. Appleby, 69 App. Div. 509, 75 N. Y. Supp. 1, affirmed in 173 N. Y. 626, 66 N. E. 1115; Jenkins v. Baker, 77 App. Div. 509, 78 N. Y. Supp. 1074; Matter of Barefield, 82 App. Div. 463, 81 N. Y. Supp. 843; Marsh v. Keogh, 82 App. Div. 503, 81 N. Y. Supp. 825. Many other authorities could be cited to the same effect, and none can be found to the contrary. The case of Robinson v. Appleby, supra, was precisely like this one, except that the depositor did not die before the beneficiary, which is another feature of the assumed dictum of Judge Bartlett in the Cunningham Case, supra, which largely controlled the learned referee and surrogate; but the beneficiary died first, and, the depositor having thereafter withdrawn the deposit, it was held that the administrator of the beneficiary could recover the entire amount, with legal interest, from the estate of the depositor. That decision was unanimously affirmed by the Court of Appeals in February, 1903 (66 N. E. 1115), constituting the latest determination of that court upon the subject; and the affirmance was a distinct and necessary recognition of the doctrine that the declaration of trust contained in the form of the deposit now under consideration, unassailed and unexplained, will support a finding of fact in favor of the creation of the trust, even where the account has been drawn out by the depositor after the death of the beneficiary.

The decision in this case below has been made in confessed defiance of the decisions of this court herein cited, in the belief on the part of the learned referee and the learned surrogate that the Court of Appeals either has decided or intends to decide accordingly. No such decision is quoted in either opinion, and none is cited on the brief of the learned counsel for the respondents. None has been found by this court, and it would not be proper to assume that one is forthcoming. The existing decisions therefore require a reversal.

The decree, in so far as it confirms the finding of the referee against the validity of the appellant's claim, should be reversed upon the law and the facts, and the claim established and allowed in full, with costs. All concur.