PERCY C. MADEIRA, AND HIS WIFE, ELISE D. MADEIRA, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82512.   Promulgated August 19, 1937.

*William R. Spofford, Esq.*, for the petitioners.
*D. A. Taylor, Esq.*, for the respondent.

OPINION.

LEECH: Since the allowance of a deduction from gross income is a matter of legislative grace, a taxpayer seeking such advantage must bring himself squarely within the law authorizing it. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435. The right to the disputed deduction is claimed under section 23 of the Revenue Act of 1928.

The existence of the loss in question, and thus its deductibility, depend upon whether the transaction detailed in the findings of fact constituted a bona fide sale of stock by petitioner, Percy C. Madeira, to the trust.

Petitioners argue that Percy C. Madeira intended and completed a gift of the $3,100 he passed to the trust as its corpus, which the trust then used in a bona fide purchase of the stock. Respondent disputes that premise and contends that such petitioner did not intend or consummate a gift of the $3,100 to the trust but that he intended to and did retain the right of return of that money in exchange for the 1,500 shares of Madeira, Hill & Co. stock, and that the transfer of the stock and not the money constituted a gift. He takes the additional position, apparently, that, assuming there was a gift of $3,100, there was no bona fide sale of the stock. In this discussion, the latter position is not considered.

The inquiry thus involves only an issue of fact. Respondent's determination is presumed to be correct, and the petitioners have the burden of proving it incorrect. *Botany Worsted Mills* v. *United States*, 278 U. S. 282. We have decided that petitioners have not overcome this presumption and that the transfer in question was a gift and not a sale of the stock.

In describing a gift, the court in *Beaver* v. *Beaver*, 117 N. Y. 421, 428; 22 N. E. 940, states what we believe is the law, as follows:

> There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and on the part of the donee, acceptance. * * * But delivery by the donor, either actual or constructive, operating to divest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. Anything short of this strips it of the quality of completeness which distinguishes an intention to give, which alone amounts to nothing, from the consummated act, which changes the title. * * *

Little, if anything, is left to the imagination by this record.

The petitioner, Percy C. Madeira, and his son, Percy C. Madeira, Jr., one of the trustees, testified openly and rather fully. The picture, thus presented, is clear.

The only purpose for the creation of the trust was its acquisition of 1,500 shares of Madeira, Hill & Co. stock, which Percy C. Madeira wished to transfer, within his family, in the form of a sale in order to support a loss deduction for income tax purposes. Of course, the purpose of tax avoidance does not vitiate the legal consequences of the transaction. *Gregory* v. *Helvering*, 293 U. S. 465. But, when such purpose is admittedly present and the transaction is between the immediate members of a family, as here, such transaction is subject to careful scrutiny to determine whether it be, in fact as well as in legal form, what its participants name it. *Benjamin T. Burton*, 28 B. T. A. 1242; *James L. Robertson*, 20 B. T. A. 112; *Charles S. Hempstead*, 18 B. T. A. 204; *Albert W. Finlay*, 17 B. T. A. 828.

Here, the purpose of the creation of the trust, before its execution and acceptance, was known not only to petitioner, Percy C. Madeira, but to both of his sons, who were named its trustees at the father's direction. The trust instrument, although providing that its distributions until termination of the trust should be made from income, did not limit the trustees in any manner in the investment of the corpus, and left them free from responsibility in the exercise of their discretion in that investment. Cf. *Guaranty Trust Co. of New York et al., Executors*, 35 B. T. A. 916.

Then, despite the trust provision that its distribution should be made from income, and without consideration of any other use of the corpus, the trustees, on the day following the execution and acceptance of the trust invested $3,000 of the $3,100 corpus in a common stock that had paid or declared no dividends since 1925. No other property has ever been acquired by the trust. This so-called investment was made with money, all of which was furnished by Percy C. Madeira, petitioner, the alleged seller, not for the convenience of the parties but out of necessity. Cf. *Commissioner* v. *Behan*, 90 Fed. (2d) 609, affirming 32 B. T. A. 1088. And the price at which the stock is alleged to have been sold is said to have been fixed by the statement of the secretary of the company that at some indefinite time in the past, under circumstances, none of which were mentioned, a sale of such stock, the amount of which is likewise not stated, occurred at that price.

True, this statement was supplemented by the observation of Percy C. Madeira, Jr., one of the trustees and the son of the petitioners, who was also one of the vice presidents of the company, from his general knowledge of the company's condition, that that amount reflected the "true value" of the stock. But it should not be forgotten that it is clearly proven that the amount of loss which Percy C. Madeira desired to establish, the number of shares he should sell to support that loss and the amount of the corpus of the trust, which was so

significantly similar to the sum used in the alleged stock purchase, were all decided before the execution and acceptance of the trust. From this it is difficult, if not impossible, to believe that the price per share at which the stock should be purportedly sold was not definitely fixed before the creation of the trust and the trustees' receipt of its corpus. Confirming this conclusion is the testimony of Percy C. Madeira that the amount of the corpus was fixed at $3,100 so that there "should be some unexpended balance in that [the trust's] bank account."

The manner in which the so-called selling price of this stock was fixed, is significant, particularly in view of the intimate relationship of the parties to the transaction, the substantial size of the block of stock involved and the fact that all the funds with which the alleged sale was effected were furnished by the petitioner, Percy C. Madeira, the seller. Cf. *Commissioner* v. *Behan, supra.*

And, a circumstance not present in any cited case, and of particular significance, is the testimony of Percy C. Madeira, Jr., one of the trustees and the son of petitioners, and Percy C. Madeira, the petitioner, the only reasonable effect of which is, that the creation of the trust and the contested acquisition of the 1,500 shares of Madeira, Hill & Co. stock from petitioner, Percy C. Madeira, constituted a single, inseparable plan and transaction to which the petitioner, Percy C. Madeira, and the trustees, were parties. That is the premise of respondent's determination. We think it is not disturbed here. From this, it follows that the implied obligation of the trustees to use the corpus of the trust in its acquisition of the Percy C. Madeira stock, the consideration for which was the creation of the trust, was essentially an inherent part of that one plan and transaction, and became effective upon the acceptance of the trust and its corpus by the trustees. See *Hazelton Corporation* v. *Commissioner*, 89 Fed. (2d) 513; *Prairie Oil & Gas Co.* v. *Motter*, 66 Fed. (2d) 309; *Edwin L. Dana*, 36 B. T. A. 231.

Nor do we think, in view of this entire record, this obligation was nullified or affected by the trust provisions granting the trustees absolute discretion in the investment of the corpus of the trust. This conclusion is strengthened rather than weakened by the oral reiteration of that provision and its purported acceptance by Percy C. Madeira, before the execution and acceptance of the trust and the transfer of its corpus.

Since the obligation of the trustees to use the corpus of the trust in the purchase of the stock of Percy C. Madeira, petitioner, unquestionably reflected a corresponding retained right of that petitioner in the $3,100 transferred to the trust as its corpus, Percy C. Madeira did not thus intend to nor did he divest himself of nor deliver to the trust dominion or control over that money. The transfer was a gift,

not of the money but of stock. *Guaranty Trust Co. of New York et al., Executors, supra.* Cf. *F. Coit Johnson,* 33 B. T. A. 1003; affd., 86 Fed. (2d) 710. The cases cited by the petitioner are distinguishable on their respective facts. The facts in each of them are measurably stronger for the position of the petitioners here than those revealed in the present record.

As heretofore stated, the controlling question here is one of fact. Thus, after a careful consideration of the stipulation and the evidence, we have concluded that the presumption favoring respondent's determination has not been overcome, and have therefore found that the transaction giving rise to the present controversy, in which the trust acquired 1,500 shares of Madeira, Hill & Co. stock from the petitioner, Percy C. Madeira, was a gift and not a bona fide sale of that stock.

It follows that no deductible loss was sustained.

*Decision will be entered for the respondent.*